## EPMEIER v. UNITED STATES.

No. 10608.

United States Court of Appeals
Seventh Circuit.

Oct. 29, 1952.

Clyde J. Cover, O. Wendell Lanning, Fort Wayne, Ind., for appellant.

Charles S. Lyon, Acting Asst. Atty. Gen., Hilbert P. Zarky, Sp. Asst. to the Atty. Gen., Gilmore S. Haynie, U. S. Atty., Ft. Wayne, Ind., Ellis N. Slack, Acting Asst. Atty. Gen., Robert N. Anderson, George F.

Lynch, Sp. Assts. to the Atty. Gen., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's action to recover an income tax paid by him for the year 1945 having resulted in judgment for defendant, he appeals. The facts are undisputed. For several years, plaintiff had been employed by the Lincoln National Life Insurance Company. During the first six months of 1945, while ill, he was paid by the company, $1800 in sickness benefits. Plaintiff did not include these payments in his income tax return, believing, as he said, that they were exempt from taxation under Section 22(b) (5) of the Internal Revenue Code then in effect. 26 U.S.C. 1946 Ed. § 22(b) (5). The Commissioner, in redetermining the tax liability, included in plaintiff's gross income the entire amount received by him for sickness benefits, resulting in a tax deficit. Plaintiff paid the additional tax assessed, filed a claim for refund, and, upon denial of the latter, brought the present suit.

The employer has statutory authority to engage in the business of insuring risks relating to life and health, and was, in the year 1945, as well as in earlier years, engaged in writing disability insurance as compensation for personal injuries or sickness. It had in effect a life and health insurance plan for its employees, pertinent provisions of which follow. "Those full-time salaried Home and Branch Office employees * * * who, * * * at the time of employment * * * pass a satisfactory medical examination, are * * * eligible for free sickness and death benefits. * * * Applicants * * * unable to pass * * * may in exceptional cases be engaged as temporary employees, * * * not entitled to sickness * * * benefits. If at some future time such temporary employees are able to pass * * * they will be transferred to the permanent salary roll. * * * It is our general rule than an employee whose disability continues beyond expiration of his sickness benefit period, will be removed from the payroll, and future sickness benefits will not be paid. * * * The administering of the sickness and death benefit plan rests with the Office Administration Department. * * * The sickness benefits * * * shall not accrue in favor of any employee who * * * is paid compensation under any Workmen's Compensation Act for illness or disability * * *. The Company, however, will pay to such employee * * * the difference between the amount of compensation * * * and the amount specified herein, whenever the compensation * * * is less than the amount specified herein. * * * The Company has provided its employees with an unusually liberal plan of sickness benefits. The payment of these benefits presupposes that the employee is carrying out the instructions of the Company doctor or the employee's private physicians during the period of recuperation. The Company reserves the right to cancel sickness benefits being paid employees, if there is an indication that the fullest cooperation is not forthcoming from the employee * * *." The plan provided also for medical facilities, hospitalization, surgery, retirement plan and life insurance. It concluded with the statement that: "Constructive suggestions from employees are always welcome. Suggestions of the following nature are particularly solicited: Savings in cost of operation, improvements in service to policyholders, expediting the work without decreasing the quality, an increase in business, and improvement in safety and health of employees." Payment of benefits was not required by statute. Plaintiff made no contribution by way of premium other than the labor and service he rendered in his employment.

The only question presented is whether, under Section 22(b) (5) of the Internal Revenue Code, 26 U.S.C. 1946 Ed. § 22(b) (5), in effect in 1945 and under the agreed facts, the sickness benefits paid plaintiff, constituted amounts "received through * * * health insurance * * * as compensation for * * * sickness." Plaintiff claims that they are within this statutory definition, while defendant insists that they are not.

■ Insurance, of ancient origin, involves a contract, whereby, for an adequate

consideration, one party undertakes to indemnify another against loss arising from certain specified contingencies or perils. Fundamentally and shortly, it is contractual security against possible anticipated loss. Risk is essential and, equally so, a shifting of its incidence from one to another. Physicians' Defense Co. v. Cooper, 9 Cir., 199 F. 576; Jordon v. Group Health Ass'n, 71 App.D.C. 38, 107 F.2d 239; Old Colony Trust Company v. Commissioner of Internal Revenue, 1 Cir., 102 F.2d 380; Alliance Ins. Co. v. City Realty Co., D.C., 52 F.2d 271; Meyer v. Building & Realty Co., 209 Ind. 125, 196 N.E. 250, 100 A.L.R. 1442; 44 C.J.S., Insurance, § 1, p. 471; 29 Am.!Jur. 47, Sec. 3; 1 Bouvier's Law Dict., Rawle's Third Revision, p. 1613; Webster's International Dictionary, 2d Ed. 1942, p. 1289.

In determining whether the benefits under consideration are within the statute and in accord with these general principles, we observe, first, that the plan under which the payments were made is not in the physical form of ordinary formal insurance contracts sold commercially, but instead is included in a company document with other subject matters having to do with the employer-employee relationship. But we know of no reason why insurance protection must be expressed in a formal policy.

■ True, no money was paid by the employee for the protection, but we think full and complete consideration lay in the contract of employment, by virtue of which, when the employee entered employment and passed a medical examination, he automatically became insured. In other words, the assumption of the risk involved and indemnity against it were part and parcel of the compensation payable to the employees by the employer. We perceive of no reason why this is not as adequate a consideration for an insurance contract as a specified cash premium. We find no implication in the language of the document that the employer was providing a gratuitous benefit but, on the contrary, the intimation is that the indemnity provided supplemented and added to the terms of employment, by assuring the employees of sickness benefits under the conditions specified.

A medical examination is a common insurance requirement. The distinction, in the plan here, between employees who did not pass and those who did is closely akin to the ordinary insurance requisites of risk measurement and assumption.

Though, as to life insurance benefits, under the plan, each employee was required to name a beneficiary, there was no such requirement for sickness benefits, obviously, however, we think, because they were to be paid only to the employee during his lifetime. The provision for termination satisfies the normal requisite of an insurance contract, by defining the risk in terms of time. Provision is made for instances of successive illnesses, thus defining within definite limitations the total benefits for which the company agrees to be liable. It is provided that in case of payment of workmen's compensation for injuries or illness the company will not pay the benefits except to the extent of any excess in them over the compensation payments. The plan warrants no inference that the amount payable represents anything other than sickness benefits, payable only when wages and salaries could not be earned. It makes the basis for the benefits, the length of service and compensation of the employee, factors consistent with the ordinary provisions of a formal insurance contract. The employee is required while ill, to follow the instructions of his physician or the company's physician, a provision closely akin to features of ordinary insurance, where the insurer is interested in avoiding extension of any resulting loss beyond that which can be reasonably avoided. We find in these and other provisions attributes of and incidents to insurance in every sense of the word.

■ Though the benefits are described as free, if the nature of the contract be given careful consideration, it is readily apparent that the word is used not in the sense of a donation or gratuity but rather with the meaning that no premium other than that included in the employee's services is to be paid. Benefits paid out under such an agreement are obviously a part of the employer's corporate operating costs, which

include social security and unemployment taxes, workmen's compensation insurance, employer's liability insurance, maintenance of satisfactory working conditions and many other elements, all of which go into the make-up of the total cost. We conclude that "free" life insurance, "free" sickness benefits, "free" medical facilities, as used here, mean simply that these matters are furnished as additional factors of the employee's compensation, free of any money advancement. The provisions of Section 22(b) (5) undoubtedly were intended to relieve a taxpayer who has the misfortune to become ill or injured, of the necessity of paying income tax upon insurance benefits received to combat the ravages of disease or accident.

As we have indicated, we know of no reason why this insurance, when provided as a part of the contract of employment between employee and employer, must follow any stereotyped or conventional form. Surely there is no legal magic in form; the essence of the arrangement must determine its legal character. We conclude that the fact that there is no formal contract of insurance is immaterial, if it is clear, as here, that, for an adequate consideration, the company has agreed and has become liable to pay and has paid sickness benefits based upon a reasonable plan of protection of its employees.

The District Court was of the opinion that, though the plan was "an incident of the employer-employee relationship as the plaintiff points out," it did not create a contractual liability to pay "health insurance," as there was no consideration for such a promise. This conclusion, it felt, was supported by the further provision that "the contents" of the document "may be changed from time to time as better thoughts occur."

We have pointed out wherein we think adequate consideration lay in the agreement of employment. Though no formal written contract of employment existed, the plan became effective, immediately and automatically, upon the employee's entering service and passing satisfactorily a medical examination. As we view it, all provisions then became binding upon the respective parties. As a consequence, if an employee became ill, he had a right to sickness benefits as a part of his contract. We do not doubt that had the employer refused payment, the employee might have enforced this liability.

The provision that the terms of the agreement may be changed does not impinge upon the soundness of this conclusion. Employment contracts are always subject to revision. If the terms of such changes are not satisfactory to the employee, he may terminate his service; he can not be forced to work under conditions repugnant to his sense of what is fair and proper. It is obvious also, we think, that no change could be made to defeat or lessen the liability, once it had attached. In the provisions lies the implicit agreement to pay the benefits until and unless the terms should be modified; no such modification could reduce the liability for sickness benefits after illness had intervened.

We conclude that the amount paid the taxpayer for sickness benefits was exempt from income tax under the statute. The judgment is reversed with directions to proceed in accord with the announcements herein contained.