*Decision will be entered under Rule 50.*

WILLIAM L. WINTER AND EUNICE R. WINTER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76016.    Filed April 11, 1961.

*Alphonsus R. Romeika, Esq.*, and *Carleton R. Hedner, Esq.*, for the petitioners.
*David E. Crabtree, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* Petitioners, husband and wife, filed a joint income tax return for 1956 with the district director of internal revenue at

Scranton, Pennsylvania. The question for decision is whether they were entitled to eliminate from gross income payments aggregating $3,732 received by the husband (hereinafter sometimes referred to as petitioner) during that year under a "Pension and Retirement Plan" of his employer, E. I. DuPont De Nemours and Company. The Commissioner concluded that such payments were not excludible from gross income and accordingly determined a deficiency of $822.23. Most of the facts have been stipulated.

Petitioner became an employee of the DuPont Company on August 1, 1921, and completed 33 years of continuous service on August 1, 1954. On the latter date, petitioner (then 58 years of age), because of a lung condition identified as "emphysema," became eligible for payments under paragraph IV(b) of DuPont's Pension and Retirement Plan, hereinafter set forth. The company began to make payments of $3,732 annually to petitioner during 1954 under the plan because of his lung condition and has continued to make payments in the same amount each year thereafter until the present time.

The Pension and Retirement Plan referred to above provides, in part, as follows:

I. PURPOSE

The purpose of this Plan is to provide for the retirement of employees and, under the conditions set forth below, to provide a retired employee with a pension that takes into account the length of his service and the rate of pay he had received prior to retirement.

   \*      \*      \*      \*      \*      \*      \*

III. RETIREMENT POLICY

It is the policy of the Company to require every employee to retire from its service at the end of the month in which he reaches the age of 65 years; he may thereafter remain in service only with the approval of the Board of Benefits and Pensions.

IV. ELIGIBILITY FOR PENSION

An employee will be eligible for pension if—

(a) he retires after reaching the age of 65 and has had at least 15 years of continuous service immediately prior thereto, or

(b) the Board finds that he has become, for any reason, permanently incapable of performing the duties of his position with the degree of efficiency required by the Company, and he has had at least 15 years of continuous service at the time of his retirement, or

(c) he voluntarily retires after reaching the age of 60 years and has had at least 30 years of continuous service immediately prior to retirement.

An employee who is discharged for dishonesty, insubordination, or other misconduct, will not be eligible for a pension, regardless of his age or length of service.

An employee who retires or is about to retire may make application for a pension to the Board of Benefits and Pensions in such form as the Board may prescribe. Such application may also be submitted on an employee's behalf by the head of his department or by any official of the Company to whom the employee reports.

## V. AMOUNT AND PAYMENT OF PENSION

A retired employee who has met the eligibility requirements of this Plan in effect on the date of his retirement will be entitled to a pension payment for each month beginning with the month following that in which he retired and ending with the month in which he dies.

(a) Each monthly pension payment will be:

(1) the amount computed by multiplying the number of years of his continuous service by $1\frac{1}{10}\%$ of his average monthly pay during the last ten years of his service, but

(2) not less than forty-five dollars plus the amount computed by multiplying the number of years of his continuous service by $\frac{2}{3}\%$ of his average monthly pay during the last ten years of his service.

The entire cost of the Pension and Retirement Plan is borne by DuPont.

The evidence shows that in addition to its Pension and Retirement Plan, DuPont has an accident and health plan under which an employee receives payments of all or a portion of his wages during a period he is absent from work on account of personal injury or sickness if the period of his absence is covered by a formal leave of absence from the company. The time covered by such leave of absence is taken into consideration in determining the employee's eligibility for a pension but is not taken into account in determining the employee's years of service in arriving at the amount of his pension.

It is stipulated that petitioner became 61 years of age on October 7, 1956. He did not, during 1956 or any other year, make an application for voluntary retirement from the company. Nor did the company, during 1956 or at any other time, (1) "notify, classify, or determine that the Petitioner was receiving payments of $3,732.00 annually as retirement payments," or (2) make any demand upon petitioner pursuant to paragraphs IV(a) or IV(c) of the plan that he retire from the employment of the company.

In their 1954 and 1955 returns petitioners excluded the $3,732 payments from gross income, relying upon section 105(d) of the Internal Revenue Code of 1954, as "payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness." The Commissioner acquiesced in such treatment for 1954 and 1955, but has taken the position that beginning in 1956, when petitioner was 60 years of age [1] and could have retired voluntarily under paragraph IV(c) of the company's plan, such payments no longer qualify for exclusion under section 105(d).

---

[1] According to the stipulation petitioner "reached the age of sixty-one (61) years on October 7, 1956." Thus it would seem that he actually became 60 on October 7, 1955. Petitioners' brief suggests that the language of the stipulation is in error and that it should have been the age of 60 that was attained on October 7, 1956. Notwithstanding this confusion the parties seem to agree that the Government accepted the returns for 1954 and 1955 without change in this respect on the theory that the payments were received by petitioner prior to his becoming 60 years of age.

The provisions contained in section 105(d) appeared in the law for the first time in 1954, and we think that it may be helpful to set forth the circumstances giving rise to their enactment. Prior to 1954 the only provisions that could be invoked by taxpayers seeking exclusion from gross income in similar circumstances were embodied in section 22(b)(5) of the 1939 Code and in like sections of prior revenue acts. Section 22(b)(5) excluded from taxable income "amounts received, through accident or health insurance * * * as compensation for personal injuries or sickness." The Government took the position, however, that payments received under a pension or disability plan such as are involved herein could not qualify as amounts received "through accident or health insurance." Although it was unsuccessful in this respect in *Epmeier* v. *United States*, 199 F. 2d 508 (C.A. 7, 1952), it nevertheless continued to press that view in cases arising under the 1939 Code. When the bill which became the 1954 Code was under consideration, Congress took this situation into account and enacted sections 104 and 105 dealing comprehensively with the problem.[2] It apparently felt that there was doubt whether the *Epmeier* decision was correct, but nevertheless wished to grant relief to taxpayers in such circumstances.[3] Accordingly, it reenacted with certain modifications in section 104 the basic provisions which had previously been

---

[2] I.R.C. 1954.
SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.
    (a) IN GENERAL.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

    *       *       *       *       *       *       *

    (3) amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer) ; and

    *       *       *       *       *       *       *

SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS.
    (a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS.—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

    *       *       *       *       *       *       *

    (d) WAGE CONTINUATION PLANS.—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. * * *
    (e) ACCIDENT AND HEALTH PLANS.—For purposes of this section and section 104—
        (1) amounts received under an accident or health plan for employees, * * *

    *       *       *       *       *       *       *

shall be treated as amounts received through accident or health insurance.
    [3] See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. A32–A34 ; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 183–185.

in the old section 22(b), and, at the same time, it enacted new provisions in section 105 intended to make sure that relief would be available to taxpayers, subject to the conditions set forth therein. One of those conditions, for example, is that the exclusion is available only to the extent that the amounts do not exceed a weekly rate of $100. To be sure, the Supreme Court subsequently in *Haynes* v. *United States*, 353 U.S. 81 (1957), approved the *Epmeier* interpretation of section 22(b)(5) of the 1939 Code, and thus the language of section 104 of the 1954 Code reenacting the old section 22(b)(5) was therefore broad enough to comprehend payments such as are involved herein.[4]  But the Supreme Court at the same time recognized that the new provisions in section 105 of the 1954 Code also had operative scope in this field, since it noted (353 U.S. at 85, footnote 4) that under the "new provisions" Congress had "limited the exclusion for receipts similar to those involved here to a maximum of $100 per week."

Further evidence of the close relationship between sections 104 and 105 in this respect appears not only from section 105(e) which provides that for purposes of both sections 104 and 105 amounts received under health or accident plans for employees "shall be treated as amounts received through health or accident insurance," but also from the almost identical language found in section 104(a)(3) and section 105(a). Section 104(a)(3) provides for *exclusion* from gross income with respect to—

amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer) ; * * *

This virtually identical language appears in section 105(a), dealing with amounts to be included in gross income, as follows:

Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

It is thus apparent that section 104(a)(3) and section 105(a) deal with the same subject matter and are in substance but two sides of the same coin. Moreover, section 105(a) is introduced by the clause "Except as otherwise provided in this section," and it is therefore plain that section 105(d), dealing with exclusions from gross income, although entitled "Wage Continuation Plans," was intended to carve out from section 105(a) those situations dealt with in section 105(d).

---

[4] The *Haynes* case has since been followed in: *Charles J. Jackson*, 28 T.C. 36 ; *J. Wesley Sibole*, 28 T.C. 40 ; *Kuhn* v. *United States*, 258 F. 2d 840 (C.A. 3) ; *Branham* v. *United States*, 245 F. 2d 235 (C.A. 6), reversing 136 F. Supp. 342 (W.D. Ky.).

Accordingly, in view of the relationship between section 104(a)(3) and section 105(a), it is clear that sections 104(a)(3) and 105(d) must be read together as dealing with different phases of the same problem, and that section 105(d) must be regarded as limiting or carving out from section 104(a)(3) those situations that would otherwise have been governed solely by section 104(a)(3) in accordance with the *Haynes* decision. This analysis is confirmed, if such confirmation be thought necessary, by the comment in the *Haynes* case, noted above, that the "new provisions" (which could refer in this respect only to section 105(d)) "limited the exclusion * * * to a maximum of $100 a week." It is therefore not strictly accurate to suggest that the problem must be dealt with only under section 104(a)(3) without reference to section 105(d). The latter has operative scope in relation to this question, and we proceed to determine whether the payments in controversy herein were properly excludible under section 105(d).[5]

Section 105(d) has been implemented by section 1.105-4(a)(3)(i) of the applicable Income Tax Regulations as follows:

(3) (i) Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension as long as he is disabled, section 105(d) is applicable to any payments which such an employee receives under this plan before he reaches retirement age, but section 105(d) does not apply to the payments which such an employee receives after he reaches retirement age.

Presumably it was pursuant to the rule set forth in these regulations that the Commissioner treated the payments received in 1954 and 1955 as excludible from gross income. His insistence that the amount received in 1956, after petitioner became 60 years old, is not excludible from gross income is based upon his contention that petitioner had then reached "retirement age." The question litigated by the parties therefore was whether petitioner had in fact reached "retirement age" merely because the plan provided that an employee could voluntarily retire at 60, notwithstanding the statement in paragraph III of the plan, *supra*, that it is the company's policy to require every employee to retire at 65.

Recognizing that there might be various optional retirement privileges at different ages in any particular plan, an administrative ruling undertook to spell out the criteria for determining "retirement age." Rev. Rul. 57-76, 1957-1 C.B. 66. That ruling provided in part as follows (p. 67):

---

[5] The petitioners and respondent have both referred to *Adam S. H. Trappey*, 34 T.C. 407, but it is not clear as to precisely what their positions are in this connection.

It is held that, for the purpose of excluding an employee's disability pension from gross income pursuant to section 1.105–4(a)(3)(i) of the Income Tax Regulations, "retirement age" will be deemed to be

(1) The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan, *i.e.,* without actuarial *or similar reduction* because of retirement before some later specified age, *provided, however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of all the pertinent facts and circumstances;* * * * [Italics added.]

The evidence shows, and we find as fact that although the *formula* for computing the amount of the pension does not provide for any actuarial reduction in cases of retirement at 60 rather than 65, the *amount* of the pension obtainable at 60 is generally less than at 65, because the amount of the pension is based not only upon the number of years of service but also upon the average pay during the last 10 years of service which is likely to be higher in cases of retirement at 65 than at 60. Moreover, the evidence further shows and we find as fact that during 1959 only 10.2 percent of the eligible employees exercised their privilege of retiring at 60 and that over the 10-year period ending in 1959 that figure ranged from 6.6 percent to "something over 13 per cent." It is plain to us from these facts, and we find as an ultimate fact that it was not the practice in the DuPont Company for employees to retire at 60. In view of the company's stated policy, as reflected in paragraph III of the plan, and in view of the financial disadvantage to an employee retiring prior to reaching 65, it is our conclusion on this record that the normal practice was retirement at 65.

We accordingly hold that the payments in controversy received by petitioner in 1956 were properly excludible from gross income under section 105(d) of the 1954 Code, as interpreted by the regulations and the ruling quoted above.

The deficiency is disapproved to the extent that it rests upon the adjustment relating to the amounts received by petitioner in 1956 under the plan. Since the only other adjustment resulting in the Commissioner's determination of deficiency was in the self-employment tax (in connection with certain directors' fees) in the amount of $31.20, which was not contested herein,

> *Decision will be entered reflecting a deficiency in the amount of $31.20.*

Reviewed by the Court.

WITHEY, J., dissenting: I dissent from the view of the majority in this case for the reason that the prevailing opinion does not pass upon the applicability of section 105(d) of the 1954 Code with respect to the facts here presented. Under section 105 generally amounts received under accident and health insurance plans which are attributable to contributions made to the funding of such plans by the employer and amounts so received which are paid by the employer are includible in the gross income of the beneficiary. Only under subsection (d) may certain of such benefits be excluded and petitioner must bring himself squarely within that subsection to benefit taxwise from its provisions.

Clearly taxpayer's receipts were from a pension plan, not from health or accident insurance. He became eligible for benefits it is true because he was permanently physically disabled, but what he received was pension, not insurance benefits. His receipts of benefits were not to compensate him for sickness or injuries suffered as the result of an accident; they were in the nature of savings or an annuity paid for at least in part by his past services to his employer. *Epmeier* v. *United States*, 199 F. 2d 508 (C.A. 7); *Haynes* v. *United States*, 353 U.S. 81. The cited cases have no application to the issue before us. The issue there is whether a plan providing compensation for ill health or disability arising from accident but funded or paid by the employer falls within the statutory "health or accident insurance" plan. Here, the issue is more fundamental; the issue is whether *a pension* paid because of ill health or physical disability is "health or accident insurance." If it is, section 105(d) makes it unnecessary to question whether all or any portion of the benefits are attributable to or paid by the employer. If not, the benefits are clearly not excludible under either section 104 or 105. Subsection (d) of the latter section was incorporated in the Code for the first time subsequent to *Epmeier* v. *United States, supra. Haynes* v. *United States, supra,* merely dealt with an issue similar to *Epmeier* arising under the 1939 Code, section 22(b)(5).

It seems clear to me that subsection (d) permits the exclusion of benefits received from a "wage continuation plan" and then only if the receipts are "for a period during which the employee is absent from work on account of personal injuries or sickness." Surely the word "employee" and the phrase "absent from work" and the phrase "personal injuries or sickness" are not consistent with the concept of a pension as distinguished from insurance benefits. The word "employee" connotes the continued status of being upon the payroll of an employer. The phrase "absent from work" connotes not only a continued status as an employee, but the continued existence of a job from which the employee is only temporarily absent. Likewise the

phrase "personal injuries or sickness," used together with the mentioned word and phrase and no mention of permanent disability being made, unavoidably leads to the conclusion that Congress intended to exclude only receipts planned to take the place of wages during a temporary "absence from work."

To the extent section 1.105–4(a)(3)(i) of the respondent's regulations would hold a pension excludible from gross income under section 105(d), it is clearly beyond the provisions of that subsection and therefore void.

Decision should have been entered for the respondent.