William E. CORKUM
and
Kathleen Corkum, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 61–107.

United States District Court
D. Massachusetts.

March 30, 1962.

William E. Corkum, Jamaica Plain, Mass., pro se.

W. Arthur Garrity, Jr., U. S. Atty., William C. Madden, A. David Mazzone, Asst. U. S. Attys., for defendant.

SWEENEY, Chief Judge.

The plaintiff sues for a refund of income taxes alleged to have been erroneously or illegally assessed and collected.

The issue to be determined is whether certain payments received by the plaintiff were payments received for a period

during which he was absent from work on account of sickness, and excludable under the provision of a Section 105(d) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 105(d), or whether they were received after he reached "retirement age" and are, therefore, not excludable.

Another issue, whether the taxpayer had improperly excluded payments received for the first seven days of two periods of absence in violation of Section 105(d), has been waived by the parties.

The facts have, for the most part, been stipulated and are generally undisputed.

William E. Corkum (hereinafter referred to as the taxpayer) and his wife Kathleen filed in April 1957 and 1958 joint income tax returns for the years 1956 and 1957, and paid the taxes shown to be due thereon. In September 1958 they filed claims for refund for both years which were disallowed, and this suit followed.

The taxpayer, who had since June 1941 been employed as First Assistant Clerk of the Municipal Court of the West Roxbury District of the City of Boston, suffered a heart attack in August 1955 and additional illness from heart trouble in 1956. On June 5, 1956 a medical panel, as prescribed by § 6(3) of c. 32, M.G. L.A., found that the taxpayer was "physically incapacitated for further duty in his present position" and that

the disability was "likely to be permanent." On August 1, 1956 the taxpayer was retired under the provisions of Section 6(1) [1] and was awarded an annual retirement allowance in the amount of $3,176.88 composed of an annuity of $341.52, which is not here in issue, and a pension of $2,835.36. He was then 68 years and 2 months old.

Under the provisions of the 1939 Code, § 22(b) (5), 26 U.S.C., all "amounts received through accident and health insurance * * * as compensation for personal injuries or sickness" were excluded from gross income; but Congress changed the language of Section 22(b) (5) when it enacted the 1954 Code. Sections 104 and 105 limit the previous broad exclusion so that amounts contributed by employers and not previously taxed to the employee are no longer excludable unless they "constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injury or sickness * * *." 26 U.S.C. § 105 (d).

The statute is not explicit on the meaning of the phrase "absent from work on account of * * * sickness"; which has, however, been defined and explained in Treasury Regulations. Section 1.-105–4(a) (3) (i) provides that an employee "is not absent from work if he is not expected to work because he has, for

---

1. "Conditions for Allowance. Any member in service classified in either Group A or Group B who becomes totally and permanently incapacitated for further duty before attaining age fifty-five and after completing fifteen or more years of creditable service, or any such member who is a veteran as defined in section one who becomes totally and permanently incapacitated for further duty before attaining the maximum age for his group and after completing ten or more years of creditable service, upon his written application on a prescribed form filed with the board or upon such an application by the head of his department after a hearing, if requested, as provided for in subdivision (1) of section sixteen and subject to the conditions set forth in said section and in this section, shall be retired for ordinary dis-

ability as of a date which shall be specified in such application and which shall be not less than fifteen days nor more than four months after the filing of such application but in no event later than the maximum age for his group, nor earlier than the last day for which he received regular compensation. No such retirement shall be allowed unless the board, after such proof as it may require, including in any event an examination by the medical panel provided for in subdivision (3) of this section and including a certification of such incapacity by a majority of the physicians on such medical panel, shall find that such member is mentally or physically incapacitated for further duty, that such incapacity is likely to be permanent, and that he should be so retired."

example, reached retirement age," which is deemed to be

"(1) The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan, i. e., without actuarial or similar reduction because of retirement before some later specified age, provided, however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of all the pertinent facts and circumstances; * * *."

The taxpayer had been a member of the State-Boston Contributory Retirement System and as such was subject to the Massachusetts Retirement Act, M.G.L.A. c. 32. Under Section 5 of chapter 32, the taxpayer would be required to retire upon reaching age 70, but could have retired voluntarily and without his employer's consent, because of superannuation after he reached age 55 or had 20 years of creditable service. If he had retired before 65, however, the pension would have been subject to a so-called "actuarial reduction." If he had retired under this section between the ages of 65 and 70, his pension would increase the longer he remained, as it is computed partly on the basis of length of service, but there would be no actuarial reduction.

In the light of these provisions the taxpayer clearly had, on August 1, 1956, reached retirement age within the meaning of the Income Tax Regulations. The taxpayer places great reliance on Winter v. Commissioner, 36 T.C. 14 (1961), which involved an almost identical issue. The Court there found, however, that the employer had a formally expressed policy of not retiring employees until they reached the maximum retirement age of 65, in spite of provisions in the pension plan for voluntary retirement earlier. Moreover, it was the practice of employees to remain until they did reach the maximum age; and the Court, therefore, held that the taxpayer who had retired with a disability before age 65 had not yet reached retirement age. No evidence of a similar policy or custom was adduced in this case.

I, therefore, find that the taxpayer had reached retirement age, when he retired under a disability, that the payments received were not in lieu of wages and that they are, therefore, not excludable from gross income. The petition for refund was properly denied, and judgment may be entered for the government.