252 F.Supp. 757 (1966)
Carl L. BIGLEY and Ella M. Bigley, his wife, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 65 C 74(2).
United States District Court E. D. Missouri, E. D.
January 25, 1966.
*758 Philip S. Alexander and Claude W. McElwee, St. Louis, Mo., for plaintiffs.
Richard D. FitzGibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.
MEREDITH, District Judge.
This is an action for the refund of income taxes for the years 1958 through 1961 in the total amount of $887.66, together with interest thereon. The parties have stipulated that all administrative and procedural prerequisites have been complied with and that plaintiffs are residents of Kirkwood, St. Louis County, Missouri. Accordingly, the matter is properly before this Court under 28 *759 U.S.C. 1346(a) and 1402(a) (1). Plaintiffs, husband and wife, filed joint income tax returns for the years in question. At issue is whether payments made to taxpayer Ella M. Bigley under the Southwestern Bell Telephone Company pension and benefits plan are properly excludable from gross income for the years in question. The word "taxpayer" as used herein will be in reference to Ella M. Bigley.

Findings of Fact
Taxpayer was born October 15, 1897. She was continuously employed by the Southwestern Bell Telephone Company, St. Louis, Missouri, (hereinafter referred to as "employer") from July 1, 1929, until October 6, 1949. On October 6, 1949, taxpayer became disabled through sickness and said disability has continued to the present. Taxpayer has not returned to work for her employer since October 6, 1949. Employer had, and still has, in effect, a "Plan for Employees' Pensions, Disability Benefits and Death Benefits" (hereinafter referred to as Plan), which Plan has been made a part of the evidence in this case. Taxpayer received sickness disability benefit payments under the Plan for the period October 6, 1949, through October 11, 1950. Since October 12, 1950, and continuing to the present, taxpayer has been paid a "disability pension" under this Plan.
The pertinent parts of this Plan are:
"Section 4. Pensions
1) a) All male employees who have reached the age of sixty years and whose term of employment has been twenty or more years and all female employees who have reached the age of fifty-five years and whose term of employment has been twenty or more years shall if they so request, or may at the discretion of the Committee, be retired from active service and, upon such retirement, shall be granted service pensions.
b) Any employee whose term of employment has been thirty years or more, or any male employee who has reached the age of fifty-five and whose term of employment has been twenty-five or more years, or any female employee who has reached the age of fifty years and whose term of employment has been twenty-five or more years may, if the case is approved by the Committee as appropriate for such treatment, be retired from active service and, upon such retirement, shall be granted a service pension.
c) Any employee who has become totally disabled as a result of sickness or of injury, * * * and whose term of employment has been fifteen years or more, shall upon retirement by reason of such disability be granted a pension, which pension is designated a `disability pension'; provided, that if, at the time of such retirement, the employee is qualified for a service pension under subparagraph (a) or (b) above, a service pension shall be granted instead of a disability pension. A disability pension shall continue so long as the employee is prevented by such disability from resuming active service with the Company. If the employee recovers sufficiently to resume active service, the disability pension shall be discontinued and if the employee reenters the service of the Company at that time, the period of absence on disability pension shall be considered as a leave of absence and not as a break in the continuity of the employee's service."
At the time taxpayer was placed on a disability pension, she was fifty-two years eleven months of age and had slightly over twenty years of service. She has never been placed on a service pension. She had reached age fifty-five and completed twenty years of service prior to the years here in issue, 1958 through 1961. Service pensions are paid out of a "Pension Fund" provided for in section 4(9) of the Plan. Disability pensions are charged to the operating expense accounts of the company when paid. (Section 4(11) of Plan.)
*760 The parties have stipulated that the employer had no policy regarding retirement other than that set forth in the Plan, that the company and committee neither encouraged employees to nor discouraged employees from retiring at the earliest ages specified in the Plan, and that both the company and the committee consider the ability to retire at a minimum age a right of the employee. Compulsory retirement age is sixty-five. We note, however, that under the Plan the committee has the discretion to retire employees from active service prior to their reaching the compulsory retirement age if, in the case of women, they have reached the age of fifty-five years and have been employed twenty or more years. The following statistics accurately reflect the retirement practices of female employees during the years in question. (Defendant has objected to these statistics as being irrelevant and not material. The objection is overruled infra.)

 Percent of
 Number of Number of Qualified
 Employees Employees Employees
Year Qualified Who Retired Retired
---- --------- ----------- ----------
 Total Under Age Total Under Age Total Under Age
 65 65 65
 ----- --------- ----- --------- ----- ---------
1958 2004 1942 218 163 10.9% 8.4%
1959 2265 2202 238 179 10.5% 8.1%
1960 2495 2430 297 239 11.9% 9.8%
1961 2665 2588 322 250 12.1% 9.7%

These statistics reveal that it was not the practice of female employees to voluntarily retire as soon as they became qualified to retire. The average age of retirement for women employees during the period in question was fifty-nine years of age. (Plaintiff has objected to this evidence. We overrule the objection infra.) Taxpayer became fifty-nine years of age on October 15, 1956.

Statement of Law
Section 105, Title 26, U.S.C., provides in subsection (a) that:
"* * * amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer."
Subsection (d), however, excludes amounts received under wage continuation plans:
"Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; * * *."
Subsection 105(d) has been construed in greater detail by section 1.105-4(a) (3) (i) of the Income Tax Regulations, as follows:
"(3) (i) Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension as long as he is disabled, section 105(d) is applicable to any payments which such an employee receives *761 under this plan before he reaches retirement age, but section 105 (d) does not apply to the payments which such an employee receives after he reaches retirement age."

CONCLUSION
It is apparent that some guidelines are necessary for determining what payments qualify for the exclusion under § 105(d); i. e., when is an employee "absent from work on account of personal injuries or sickness." We find that regulation 1.105-4(a) (3) (i) is a reasonable exercise of the authority granted the Secretary or his delegate to prescribe needful rules and regulations for the enforcement of the internal revenue laws. 26 U.S.C. § 7805. However, the regulation still leaves some uncertainty. Thus, the question here at issue is the meaning of "retirement age" as used in the regulation. Retirement age could refer to any one of the following: (1) the age when taxpayer first became eligible for voluntary retirement; (2) the age when taxpayer would have been compulsorily retired; (3) the average age of retirement of employees in the same class as taxpayer; or (4) the age when this taxpayer probably would have retired had she not become disabled.
Revenue Rule 57-76, 1957-1 C.B. 66, defines "retirement age" as follows:
"(1) The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement computed at the full rate set forth in the plan, i. e., without actuarial or similar reduction because of retirement before some later specified age, provided however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of all the pertinent facts and circumstances; or
"(2) in the absence of a written employee's pension annuity plan meeting the requirements of (1) above, the age, if any, at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which the particular employee belongs, provided such age is reasonable in view of all the pertinent facts and circumstances; or
"(3) if neither (1) or (2) is applicable, age 65, the retirement age (as defined in (1) above) generally specified in the old-age and survivors insurance provisions of the Social Security Act and the age at which the retirement income credit provided by section 37 of the Code generally becomes effective."
On its face this ruling appears to be a fair and reasonable interpretation of the regulation. But, varying results are found in the cases applying the rule.
In Winter v. Commissioner, 36 T.C. 14, affirmed 303 F.2d 150 (3 Cir. 1962), it was held that voluntary retirement age would not correspond with the "employer's actual practice" where the evidence showed that employee practice was not to retire at the voluntary age. This concept has been reiterated in Tolmie v. United States, 246 F.Supp. 451, 452 (W.D.Wash.1965), where the Court stated:
"In this respect the Court agrees with the Court of Appeals for the Third Circuit that the retirement practice of the employees is competent evidence of the retirement practice of the employer in a situation such as this where the employer has no affirmative policy or practice with regard to retirement prior to the compulsory retirement age and acquiesces in the practice of the employees."
The present case is similar in this respect. The taxpayer has offered, and we hold admissible, evidence showing that approximately ninety percent of the women employees qualified to retire during the tax years in question did not retire. However, the similarity among *762 these cases ends at this point. In Winter the Tax Court said, 36 T.C. 14, 20:
"It is plain to us from these facts, and we find as an ultimate fact that it was not the practice in the DuPont Company for employees to retire at 60. In view of the Company's stated policy (that retirement is compulsory at age 65) * * * and in view of the financial disadvantage to an employee retiring prior to reaching 65, it is our conclusion that the normal practice was retirement at age 65." (Parenthetical matter and emphasis added.)
We cannot make a similar determination here. The defendant has offered as evidence a statement appearing in paragraph 4 of Count I of the complaint that the average retirement age of female employees of employer during the years in question was fifty-nine years of age. Defendant urges the admission of this evidence as a judicial admission since it is against interest and plaintiff has not shown either that it was improvidently made or erroneous. Defendant has also supported its introduction by an affidavit showing that fifty-nine was, in fact, the average retirement age during these years as reflected by the records of the employer. This evidence is accordingly received. See 31A C.J.S. Evidence § 301. It does not appear that evidence of average retirement age was considered in the Winter and Tolmie cases. Two recent cases have distinguished the Winter case on this ground. See Corkum v. United States, 204 F.Supp. 471, 473 (D.Mass. 1962), and Conroy v. Comm'r, 41 T.C. 685, 694 (1964). In both of these cases the taxpayer had passed the average retirement age. Accordingly, those Courts held the taxpayers were not "absent from work because of sickness or injury" since they had passed the normal or average retirement age and thus were not expected to work.
There can be no doubt that some objective rules must be established. Absent such rules, great uncertainties and burdens will be placed upon both the Commissioner and the taxpayer. We find that Revenue Ruling 57-76, if it is properly applied and if the purpose of § 105(d) is kept in mind, provides reasonable and relatively fixed objective standards for deciding such issues. Section (1) provides that the lowest age at which the employee can voluntarily retire at full rate shall be used in applying Regulation 1.105-4(a) (3) (i) unless it can be shown that such age is not reasonable in view of all the facts and the employer's actual practice. Section (3) then says that if section (1) is not applicable, age sixty-five will be used as retirement age. It is not stated that "average retirement age" should be used. Average retirement age would merely be one of the factors to consider in determining whether or not the lowest voluntary retirement age is reasonable. Thus, in Watson v. United States, 246 F.Supp. 755, 757 (E.D.Tenn.1965), the Court held § 105(d) applicable because:
"The evidence indicates that the taxpayer would not have retired at age 60, nor by 1959, but for his forced retirement due to disability. The family circumstances and financial needs of the taxpayer would indicate that this was not unreasonable upon the part of the taxpayer. The evidence does not establish any actual practice upon the part of the employer that would have required his retirement at age 60 or at any age before 70. The evidence introduced by the Government only reflects that a varying percentage of employees do retire each year until age 70 is reached."
In the present case, it is clear that the lowest age at which taxpayer could have voluntarily retired is not reasonable in view of the practice of similarly situated employees and the nature of the pension she was receiving. The employer had the right under the Plan to finally retire any female employee who had reached fifty-five and had served twenty years or more, yet taxpayer had never been placed on a service pension. The disability pension being paid taxpayer was funded out of the operating expense accounts of the employer and employees placed on disability *763 pensions were considered as being on "leave of absence." It is thus clear that the employer considered taxpayer as being "absent from work on account of personal injuries or sickness * *" Accordingly, we find that section (1) of Revenue Ruling 57-76 is not reasonably applicable to the case at bar. That being so, section (3) of that ruling is applicable and age sixty-five is to be taken as "retirement age" in applying Regulation 1.105-4(a) (3) (i).
Judgment will be entered for plaintiffs as prayed.