Joseph H. and Anne M. **WALSH**, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

No. 68–C–686.

United States District Court, E. D. New York.

Nov. 18, 1970.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for plaintiffs; by Joseph Zuckerman, New York City, of counsel.

Edward R. Neaher, U. S. Atty., Brooklyn, N.Y., for defendant; by Cyril Hyman, Asst. U. S. Atty., Robert J. Hipple, Atty., Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson, Atty., Washington, D. C., Dept. of Justice, of counsel.

## MEMORANDUM OF DECISION

JUDD, District Judge.

This is an action for a tax refund of $576.21 for income taxes alleged to have been wrongfully collected from the plaintiffs. Jurisdiction is conferred on this court by Section 1346(a) (1) of Title 28 of the United States Code.

The case presents the question whether pension payments based on a disability retirement shortly before eligibility for service retirement are deductible as "sick pay" after the taxpayer becomes eligible for service retirement.

### Facts

Most of the facts have been stipulated, the stipulation being supplemented by official documents received as exhibits and by testimony concerning the operation of the retirement system.

Payments to plaintiff Joseph H. Walsh from the New York City Fire Department Pension Fund (hereinafter called the Pension Fund) in the sum of $3,226.32 were included in the adjusted gross income and taxable income in the joint income tax return of Walsh and his wife for the year 1965. An amended return was filed on June 12, 1967, claiming a refund of $576.21, attributable to the exclusion from gross income of the total payment received from the Pension Fund. The claim was disallowed by the District Director of Internal Revenue, and this refund suit was timely filed thereafter.

Walsh had been employed by the New York City Fire Department in the position of motor pump operator. Under the rules and regulations of the Department, he was required to submit to an annual medical examination. On October 4, 1962, after the regular annual physical examination disclosed that he had a heart condition which rendered further employment as a fireman impossible, he was granted disability retirement.

At the time of his retirement, plaintiff was fifty years old and had nineteen years and four months of service with the Department. He would have been eligible for service retirement after twenty years of service.

Pension payments for disability retirement after more than ten years of service are at the rate of half the employee's annual salary at the date of retirement. N.Y.C.Admin.Code, § B19–7.88. Pension payments for service retirement after twenty years are also at the rate of half the employee's annual salary at the time of retirement. Admin.Code, § B19–7.87.

The Pension Fund imposes restrictions on the right to continue receiving disability pension before a beneficiary reaches the minimum period to qualify for service retirement. Prior to reaching the minimum period for service retirement, he is required to submit to annual physical examinations to determine whether he is able to engage in a "gainful occupation." Admin.Code, § B19–7.86. If he is found able to engage in any gainful occupation, his name is added to preferred eligible civil service lists for the positions for which he is found qualified, and his disability retirement allowance is reduced by the amount of his earnings. The Fire Department officer who runs the pension plan testified, however, that he knew of no case in which a fireman retired for disability had returned to work as a fireman after his disability terminated.

Walsh has in fact been employed on a full-time basis since leaving the Fire Department. He reported wage earnings of $6,348.02 on his 1965 income tax return, which listed his occupation as "chauffeur" and showed a deduction for union dues to the Teamsters Union.

The New York City Fire Department considers a fireman to be actually retired when he has passed the minimum period for service retirement even though he is receiving a disability pension. Walsh is still listed as disabled.

Firemen are not urged to retire when they have completed their twenty-year minimum period for service retirement. In fact, the Fire Department encourages its employees to continue in service, if they are physically able to do so. Retirement is compulsory at age sixty-five.

Only about 12½% of the firemen eligible to retire after twenty years of service did in fact retire within one year after becoming eligible, according to statistics covering the period January 1, 1964 to June 30, 1967. As of June 30, 1967, 1,666 members of the retirement system, from a total of 12,190 members, had completed twenty years of service. However, only fifty-four members of the system (including fourteen medical officers) had completed twenty-seven years of service, and very few were above age fifty-eight.

Plaintiff expected to continue in service until he reached age sixty-five if he had not been retired for disability.

A fireman who does not retire after twenty years of service receives the benefit of salary increases which may take place in succeeding years, and also benefits from an increase of pension amounting to $50.00 for each year after the minimum period of service retirement, up to a maximum of $500.00 additional. Admin.Code, § B19–7.87.

The medical board which passed on Walsh's disability was composed of the Chief Medical Examiner of the Municipal Civil Service Commission, a physician appointed by the Board of Trustees of the Pension Fund, and a physician appointed by the Commissioner of Hospitals. Admin.Code, § B19–7.63. The government does not dispute the finding of the medical board that plaintiff was in fact disabled to continue work as a fireman.

The Pension Fund is a contributory fund, with firemen contributing 25% of the necessary payments and the city the remaining 75%. Admin.Code, § B19–7.-65. (The member contribution was 45% before 1951.) When a fireman becomes entitled to pension benefits or other benefits, an amount equal to his retirement allowance reserve is transferred from the retirement allowance accumulation fund to the retirement allowance reserve fund. *Ibid.* All retirement allowances, whether for disability, accident or service, are paid from the same retirement allowance reserve fund. Admin. Code, § B19–7.66.

Members of the Fire Department are entitled to unlimited sick leave during absence caused either by injury or sickness. Admin.Code, § 487a–7.1.

### Statute and Regulations

Deductions for sick pay are governed by Section 105 of the Internal Revenue Code of 1954, which provides in part:

"§ 105. *Amounts Received Under Accident and Health Plans.*

(a) *Amounts Attributable to Employer Contributions.*—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible on the gross income of the employee, or (2) are paid by the employer.

\*,  \*  \*  \*  \*  \*

(d) *Wage Continuation Plans.*—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from

work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100.

\* \* \*

(e) *Accident and Health Plans.*— For purposes of this section and section 104—

(1) amounts received under an accident or health plan for employees, and

(2) amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia,

shall be treated as amounts received through accident or health insurance."

The Treasury regulations on sick pay during 1965 included the following:

" § 1.105–4 *Wage Continuation Plans.*
(a) *In General.*

\* \* \* \* \* \*

(3) (i) Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension as long as he is disabled, section 105(d) is applicable to any payments which such an employee receives under this plan before he reaches retirement age, but section 105(d) does not apply to the payments which such an employee receives after he reaches retirement age."

The term "retirement age" was defined in a revenue ruling in 1957 as follows:

"It is held that, for the purpose of excluding an employee's disability pension from gross income pursuant to section 1.105–4(a) (3) (i) of the Income Tax Regulations, 'retirement age' will be deemed to be

(1) The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan, *i. e.,* without actuarial or similar reduction because of retirement before some later specified age, provided, however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of all the pertinent facts and circumstances; \* \* \* (Rev.Rul. 57–76, 1957–1 Cum.Bull. 66)."

Subsequent amendments of the Regulation and Revenue Ruling will be mentioned in the discussion of the applicable law.

*Discussion of Law*

Determination of plaintiff's tax liability depends on two questions:

(1) Was Walsh absent from work during 1965 "on account of \* \* \* sickness"? and

(2) Had Walsh in 1965 reached "retirement age"?

*Absence on Account of Sickness*

Walsh was found disabled from work as a fireman, by a ruling of a medical board of three physicians made after a physical examination. There has been no challenge to the good faith of this finding. It is not necessary to consider what would happen if the government showed that a fireman was not really unable to work as a fireman, but that he had been granted a disability pension simply to provide him with income tax benefits.

The fact that Walsh was working as a chauffeur does not prevent his being disabled from work as a fireman. It is well known that work as a fireman requires special qualifications for stren-

uous physical effort. The court may infer from the facts in evidence that his heart condition was of such a nature that it disqualified him from that work, but that it did not necessarily prevent him from continuing to hold a license as a chauffeur.

The Internal Revenue Service has held that as long as a disability pension is not terminated by other employment, the fact that an employee engages in a different gainful occupation does not terminate the deductibility of the disability pension. In Revenue Ruling 57–178, it was stated:

"Accordingly, it is held that an employee, who is receiving a disability pension excludable from gross income subject to the limitations provided in section 105(d) of the Code, may be engaged in a gainful occupation as a self-employed individual or as an employee of another employer without affecting the tax treatment of his disability pension. However, such a course of conduct is a factor in determining whether the employee's absence was due to personal injury or sickness, or to some other reason." (Printed in Mertens, Law of Federal Income Taxation, 1954–57 Rulings, pp. 714–15.)

The fact that Walsh's absence was caused by his heart condition is also supported by his express intention to continue working until he was sixty-five. He was only fifty-three during the tax year in question. At some later age, the court might be skeptical of testimony of a retired fireman that he would have still been working if not found disabled. But there is no need to determine in this case the point at which such skepticism would outweigh affirmative testimony of the fireman's intention.

Another factor supporting the continuation of Walsh's disability retirement is the fact that such retirement not only deprived him of the modest annual increases in pension for longer service, but also foreclosed any benefit to him from subsequent salary increases during the present inflationary era by freezing his retirement allowance at the final salary he was earning when he was determined to be disabled.

The fact that firemen have unlimited sick leave does not alter the foregoing conclusions, for the right to sick leave does not prevent the medical board from finding that a fireman is not capable of working as a fireman and from putting him on a disability retirement allowance much lower than his salary, at any time that his annual physical examination indicates that this should be done.

*The Determination of Retirement Age*

The words "retirement age" do not appear in the statute, but are used in the regulations as a factor indicating whether or not absence from work is caused by disability.

Where disability payments were received by taxpayers who were below the age at which employees actually retired in normal course, courts have uniformly held that the disability payments were excludable under I.R.C. § 105(d).

In a typical case in this circuit, a New York Telephone Company employee was given the benefit of the sick-pay exclusion for disability payments received six years after she had reached the minimum age for retirement. Keefe v. United States, 247 F.Supp. 589 (N.D.N.Y. 1965). There was evidence there that only 15% of female employees retire at age fifty-five, as permitted under the company's plan, and that the plaintiff would have kept working until age sixty-five. The court inferred from the small number of employees who retire that early retirement was not in conformity with the company's actual practice.

Cases of similar import include:

Stewart v. United States, 313 F.Supp. 195 (W.D.Pa.1970), involving an employee who had quit work for physical disability at age fifty-four and continued to receive disability retirement benefits after he was fifty-five years old and at a time when he would have qualified for service retirement.

Winter v. Commissioner of Internal Revenue, 36 T.C. 14 (1961), where it appeared that only 10% of the eligible employees retired at age sixty and the court held that sickness benefits received after age sixty-one were entitled to exclusion from income; the Tax Court's decision was affirmed by the Third Circuit as a correct interpretation of the regulations and ruling. Commissioner of Internal Revenue v. Winter, 303 F.2d 150 (3d Cir. 1962).

Tolmie v. United States, 246 F.Supp. 451 (W.D.Wash.1965), holding that the retirement practice of the employees was competent evidence of the right to continued exclusion of disability pay.

Watson v. United States, 246 F.Supp. 755 (E.D.Tenn.1965), involving a sixty-three year old federal civil service employee, retired for disability at fifty-six years of age with almost thirty years of service, but who would not have taken voluntary service retirement at age sixty if he were able to work.

Bigley v. United States, 252 F.Supp. 757 (E.D.Mo.1966), where a sixty-four year old taxpayer had been retired at age fifty-one because of sickness, and evidence showed that only 10% to 12% of qualified employees retired under age sixty-five.

Findings of fact adverse to the taxpayer were involved in Corkum v. United States, 204 F.Supp. 471 (D.Mass. 1962), one of the cases on which the government relies. The taxpayer was found physically incapacitated by a medical panel when he was sixty-eight years and two months old, and could have retired without any actuarial reduction in his pension. There being no evidence of a practice of employees to remain until they reached maximum age, or of a policy of the employer not to retire them until the maximum age, the court found as a matter of fact that the taxpayer had reached retirement age and therefore held that his payments were not excludable from gross income.

Taxpayers over sixty were also involved in Conroy v. Commissioner of Internal Revenue, 41 T.C. 685 (1964), which the government cites. This case involved four members of the Baltimore City Police Department, who had been retired for several years and who were all over sixty, with more than thirty years of service, during the tax years in dispute. It appeared that the average retirement age of department members for five years had been below fifty-eight, with less than twenty-eight years of service. Moreover, more than half the retirements during this period had been based on physical disability and voluntary retirement was a rarity. The Tax Court found that the record did not justify the same findings it had made in the *Winter* case, and that the reason the petitioners in *Conroy* were absent from work was that they were not expected to work because they had reached retirement age.

Plainly, the case at bar is different from O'Neal v. United States, 314 F. Supp. 383 (D.S.C.1969), where early retirement was urged by the employer as an incentive for the promotion of younger men.

*The 1966 Amendment of the Regulation*

In 1966, the Internal Revenue Service amended Reg. 1–105–4(a) (3) so as to change the definition of "retirement age." The amendment provided that retirement age for sickness payments should be determined on the basis of a definition set forth in a newly adopted regulation relating to group term life insurance purchased for employees. The new definition omitted the proviso in the 1957 Revenue ruling concerning the employer's actual practice and the reasonable determination on the basis of "all the pertinent facts and circumstances." Instead, it stated that (Reg. 1.79–2(b) (3):

"the meaning of the term 'retirement age' * * * shall be considered to be the earlier of—

(1) The earliest age indicated by such plan at which an active employee has the right (or an inactive individual would have the right had he contin-

ued in employment) to retire without disability and without the consent of his employer and receive immediate retirement benefits computed at either the full rate or a rate proportionate to completed service as set forth in the normal retirement formula of the plan, i. e., without actuarial or similar reduction because of retirement before some later specified age, or

(2) The age at which it has been the practice of the employer to terminate, due 'to age, the services of the class of employees to which he last belonged."

There being no statement in the 1966 Regulation that it shall be applied without retroactive effect, it might apply to the present case as an official interpretation if it conforms with the statute. See 26 U.S.C. § 7805(b).

This court is aware that:

"Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes * * * ." Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948).

On the other hand, an income tax regulation cannot take away a benefit conferred by the Internal Revenue Code. Dorfman v. Commissioner of Internal Revenue, 394 F.2d 651, 655 (2d Cir. 1968); Smith v. Commissioner of Internal Revenue, 332 F.2d 671 (9th Cir. 1964); see also Dixon v. United States, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965).

■ To the extent that the 1966 amendment to Treasury Regulation 1–105.4(a) (3) holds that income tax exclusions automatically terminate when an employee becomes eligible for service retirement, it is invalid as adding an unauthorized restriction on a statutory benefit.

The Internal Revenue Code entitles a taxpayer to exclude from gross income any payments which are received "for a period during which the employee is absent from work on account of personal injuries or sickness." Section 105(d).

In depriving a taxpayer of this benefit because he could in a particular tax year have retired without being disabled, and in denying effect to evidence that the taxpayer would not have retired if he were not disabled, the regulation circumvents the purpose and meaning of the statute.

■ The court having found as a fact that Walsh was absent from work during 1965 because of sickness (i. e., a heart condition which rendered further employment as a fireman impossible), he is entitled to the exclusion.

This Memorandum is intended to contain the findings required by F.R.Civ.P. 52.

Judgment should be entered for the plaintiff, on the basis of a recomputation by the Internal Revenue Service, which may be submitted to the court for resolution if the parties are unable to agree upon the amount of the refund.