COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

William L. WINTER and Eunice R. Winter, Respondents.

No. 13823.

United States Court of Appeals Third Circuit.

Argued April 2, 1962.

Decided May 14, 1962.

David O. Walter, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for petitioner.

Alphonsus R. Romeika, Philadelphia, Pa. (Romeika, Fish & Scheckter, Philadelphia, Pa., on the brief), for respondents.

Before GOODRICH and GANEY, Circuit Judges, and SHERIDAN, District Judge.

GOODRICH, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States in favor of the taxpayer.[1] The question involved is a very narrow one. It is whether payments made to the taxpayer under the E. I. Du Pont De Nemours and Company (Du Pont) Pension and Retirement Plan are includable in the taxpayer's gross income for the year 1956.

The taxpayer was employed by Du Pont for thirty-three years prior to August 1, 1954. He was then fifty-eight years of age. Because of a disabling lung condition he began, on August 1, 1954, to receive payments under the Du Pont retirement plan and continues to receive those payments to date. For the years 1954 and 1955 the exclusion of these payments from taxpayer's gross income was accepted by the Commissioner. But on October 7, 1956, the taxpayer became sixty-one, and the Commissioner determined that payments for that year should be included in his gross income. The Tax Court, one judge dissenting, disagreed with the Commissioner and held that the payments should not be so included. 36 T.C. 14 (1961).

The material out of which a decision must be rendered is meager. The statutory provision is section 105(d) of the Internal Revenue Code of 1954, 26 U.S. C.A. § 105(d). It provides, in part:

"(d) Wage continuation plans.— Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100."

The next piece of relevant material is section 1.105–4(a) (3) (1) of the Treasury Regulations. It reads:

"Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension as long as he is disabled, section 105(d) is applicable to any payments which such an employee receives under this plan before he reaches retirement age, but section 105(d) does not apply to the payments which such an employee receives after he reaches retirement age."

Finally, there is a ruling, Rev.Rul. 57–76, 1957–1 Cum.Bull. 66, 67. The relevant portion of that ruling says:

"(1) The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan, i. e., without actuarial or similar reduction because of retirement before some later specified age, provided, however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of all the

1. The taxpayer is William L. Winter. Mrs. Winter is joined because they filed a joint return.

pertinent facts and circumstances * * *."

The problem is, as anyone can see who has followed the statute, regulation and ruling, when Mr. Winter reached retirement age. The Commissioner says he reached retirement age at age sixty because under the Du Pont plan he could have then retired. But, on the other hand, a Du Pont employee was not compelled to retire at sixty but was required to retire at sixty-five unless special action was taken by the company. An employee who retired when he became sixty did not receive a pension at any different "rate" under the formula for determining retirement pensions but he did get less pension money per year. This is because the amount an employee receives each month is determined by his length of service multiplied by a percentage of average salary for a stated number of months.

■■ It was shown in evidence and found as a fact by the Tax Court that during 1959 only 10.2 per cent of the eligible employees "exercised" their privilege of retiring at sixty and that over the ten-year period ending in 1959 the percentage of eligible employees retiring at sixty ranged from 6.6 per cent to something over 13 per cent. The Tax Court found as an ultimate fact that it was not the practice for Du Pont employees to retire at sixty. While we are not bound by that ultimate fact decision we agree with it on the evidence shown.

On behalf of the Commissioner is urged that the Tax Court's conclusion is contrary to the plain language of the regulations and is a clear misinterpretation of the ruling quoted above.

■ We think the Tax Court was right and that its interpretation of the ruling and the regulations is correct. The narrow question, of course, is what is meant by retirement age. We think that the figures as to the percentage of eligible employees retiring at age sixty clearly show that the practice of Du Pont employees, and necessarily agreed to by the company, is that retirement is postponed beyond the sixty-year age at which the company permits, but does not require, retirement.

The decision of the Tax Court will be affirmed.