Roy T. Kelley and Evelyn S. Kelley v. Commissioner.
Kelley v. Commissioner
Docket No. 4593-63.
United States Tax Court
T.C. Memo 1965-262; 1965 Tax Ct. Memo LEXIS 68; 24 T.C.M. (CCH) 1432; T.C.M. (RIA) 65262; October 1, 1965
*68 Petitioner, an employee of the Post Office Department, elected to retire for disability on January 1, 1954. He reached the lowest age specified in the Civil Service Retirement Act at which he could retire without the consent of his employer and without actuarial or similar reduction on March 20, 1956, or age 60. The amount received by petitioner under the Retirement Act from March 20, 1956 through December 31, 1958 exceeded by $2,080.05, the $3,028.28 which constituted his aggregate contribution to the retirement plan. Held, petitioner's contributions to the Civil Service retirement fund were fully recovered prior to the tax year in question and amounts received by petitioner in 1959 were annuity payments includable in gross income pursuant to Sec. 72(d), I.R.C. 1954. Miles L. Hulse, 44 Maple St., Needham, Mass., for the petitioners. Raoul E. Paradis, for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against petitioners *70 for the taxable year 1959 in the amount of $102.54. The only issue is whether the monthly payments of $166 received by Roy T. Kelley under the Civil Service Retirement Act, as amended, and aggregating $1,992 for the year 1959, are amounts received by him as an annuity includable in gross income under section 72 of the Internal Revenue Code of 1954, or are excludable from gross income as amounts received through accident or health insurance within the provisions of sections 104 and 105. Findings of Fact Some facts and all of the evidence upon which findings of fact are based have been stipulated. Petitioners are husband and wife and reside in Needham, Massachusetts. They filed a joint income tax return for the taxable year 1959 with the district director of internal revenue for the district of Massachusetts. Roy T. Kelley will hereinafter be referred to as petitioner. Petitioner was a member of the Armed Forces of the United States from July 25, 1917 until November 21, 1918. From July 1927 until December 31, 1953, petitioner was an employee of the Post Office Department in the Classified Civil Service of the United States. As early as January 1936, if *71 not before, he was serving as a letter carrier. On January 1, 1954, he elected to retire from service for disability. Collectively, petitioner was in the military service and in the Classified Civil Service of the United States for 28 years and three months. His last day in pay status was December 31, 1953, at which time he was nearing his 58th birthday. Under the controlling statute, 5 U.S.C. 691, age 60 with 30 years of service was the age at which petitioner would have become eligible for voluntary retirement without actuarial reduction of the retirement pay provided for age 60 after 30 years of service. His retirement would have been mandatory at age 70. Petitioner reached age 60 on March 20, 1956. On that date he would have had thirty years and five months of service if he had not previously retired on account of disability. From March 20, 1956 through December 31, 1958, petitioner received retirement benefits under the Retirement Act totaling $5,108.33. The amounts withheld from petitioner's salary during all of his civilian Federal service and pursuant to the Civil Service Retirement Act, as amended, totaling $3,028.28. This aggregate amount was *72 withheld while petitioner was employed as a postal employee. No such deductions were made during the period of his military service. The $5,108.33 received by petitioner between March 20, 1956 and December 31, 1958, exceeded by $2,080.05 the $3,028.28 which constituted his aggregate contribution to the retirement plan and petitioner's contributions were fully recovered prior to the tax year in question. During the calendar year 1959 petitioner received monthly payments of $166 each, for a total of $1,992. The receipt of this aggregate amount was reported on petitioners' joint Federal income tax returns filed for the taxable year 1959 and was excluded from gross income as "excludable sick pay." During the calendar years 1956, 1957 and 1958 the amounts of employer and employee contributions to the Civil Service Retirement and Disability Fund were as follows: Calendar
Contributions
Year
Employer [1]
Employee [2]
1956
$527,666,131
$529,084,159
1957
246,777,121
668,411,219
1958
727,309,333
734,721,297
*73 In his determination of deficiency, respondent included as taxable income the amount of $1,992 received by petitioner under the Civil Service Retirement Act for the year 1959, which petitioner had excluded from gross income as "excludable sick pay." Opinion Petitioner contends that the amounts received in 1959 from the Civil Service Disability and Retirement Fund are proceeds of accident and health insurance as defined in section 105(e) and are excludable from gross income under the provisions of sections 104(a)(3) and 105(d). [1]
*74 The respondent takes the position that the amounts herein constituted retirement benefits under the Civil Service Retirement Act, not amounts received through accident or health insurance and that all of the amounts received by the petitioner in 1959 were annuity payments includable in gross income under section 72 of the 1954 Code [2] because petitioner had fully recovered his contributions to the retirement fund prior to that year. In the alternative, respondent contends that if the amounts received by petitioner may be characterized as amounts received through accident or health insurance, they are either "attributable to contributions by the employer which were not includible in the gross income of the employee," or "are paid by the employer," and are consequently includable in petitioner's gross income pursuant to sections 104 and 105 of the 1954 Code. *75 If, as respondent contends, the amounts in question are properly to be regarded as retirement benefits and not amounts received through accident or health insurance within the meaning of sections 104 and 105, section 72 is applicable and we do not understand that petitioner makes any contention to the contrary. See in that connection Heard v. Commissioner, 326 F. 2d 962 (C.A. 8, 1964) affirming 40 T.C. 7 (1963) certiorari denied 377 U.S. 978. In section 1.105-4(a)(3)(i) [3] of the Income Tax Regulations it is provided that "section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness," and that "an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age" and further that "section 105(d) is applicable to any payments which such an employee receives under this plan before he reaches retirement age, but * * * does not apply to payments which such an employee receives after he reaches retirement age." The parties are in agreement as to the applicability of this regulation. It is to be noted, however, *76 that the regulation does not define the term "retirement age" and the parties are in disagreement as to the meaning of the term as it relates to the petitioner. The term retirement age has been defined in Revenue Ruling 57-76, 1957-1 C.B. 66, [4] and both parties seek to find in that ruling the answer to the *77 question in dispute. According to the Ruling "retirement age" is deemed to be "(1) The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan, i.e., without actuarial or similar reduction because of retirement before some later specified age, provided, however, that such retirement corresponds with the employer's actual practice and is reasonable in view of all of the pertinent facts and circumstances"; or (2), in the absence of a written plan as outlined in (1), "the age, if any, at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which the particular employee belongs, provided such age is reasonable in view of all of the pertinent facts and circumstances"; or (3) if neither (1) nor (2) applies "age 65, the retirement age generally specified in the old-age and survivors insurance provisions of the Social Security Act *78 and the age at which the retirement income credit provided by section 37 of the Code generally becomes effective." *79 In William L. Winter, 36 T.C. 14, affd. 303 F. 2d 150, the taxpayer, an employee of the duPont Company retired for disability reasons on August 1, 1954, at age 58 after 33 years of continuous service. The written pension and retirement plan provided for disability retirement after 15 years of continuous service. It was also provided that every employee should retire at age 65. According to the facts, the pension in the case of retirement at age 65 would be higher than at age 60. The facts also established that according to actual experience in 1959, the pertinent year in that case, only 10.2 percent of the eligible employees exercised the privilege of retiring at age 60 and over the 10-year period ending in 1959 the percentage ranged from 6.6 percent to "something over 13%." And as a consequence, it was established that it was not the practice in the duPont Company for employees to retire at age 60. It was concluded and held that the normal practice was to retire at age 65 and that for the purposes of that case 65 was the retirement age within the meaning of the regulations. Petitioner contends that the retirement age in his case is 65, as shown by category *80 3 of the Revenue Ruling 57-76, being the retirement age generally specified in the oldage and survivors insurance provisions of the Social Security Act. And, as supporting this position, he relies on William L. Winter, supra. In William E. Conroy, 41 T.C. 685, the petitioner was a retired Baltimore City policeman. The retirement plan under which he retired provided for voluntary retirement as a matter of right at age 60 after 30 years of service and compulsory retirement at age 70. There was also a provision for retirement in the case of inability to perform police duties by reason of physical disability. After 27 years service at age 60 Conroy was retired for physical disability. In the year at issue he was 64 years old and if he had remained in service would have had 31 years of service, which was one year more than the 30 years required for voluntary retirement. It was established that under the retirement plan the average ages and years in service of those who retired were less than Conroy's would have been in the taxable year, assuming he had continued on active duty. It was pointed out that there was nothing in the record which would *81 indicate that the average age and years of service at which members retired voluntarily were more than 60 and 30, respectively. It was accordingly held that Conroy was not "absent from work" during the years in question since he was not expected to work because he had reached retirement age. After careful consideration of the facts, we are convinced that the record supports the application of the Conroy case and not Winter. Unlike Winter, there are no facts of record here to show that retirement at age 65 is or was the normal practice for postal employees. Petitioner admitted he could not supply evidence that it was. In addition, both parties accept Revenue Ruling 57-76 as being the proper interpretation and application of the statute and the regulation, and the facts here match category (1) of that Ruling. Applying Conroy, we accordingly hold for the respondent. Decision will be entered for the respondent. Footnotes
1. Includes direct appropriations, agency contributions, and payments by Government corporations and District of Columbia Government. SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS. (a) General Rule for Annuities. - Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract. * * *
(d) Employees' Annuities. - (1) Employee's Contributions Recoverable in 3 Years. - Where - (A) part of the consideration for an annuity, endowment, or life insurance contract is contributed by the employer, and (B) during the 3-year period beginning on the date (whether or not before January 1, 1954) on which an amount is first received under the contract as an annuity, the aggregate amount receivable by the employee under the terms of the contract is equal to or greater than the consideration for the contract contributed by the employee, than all amounts received as an annuity under the contract shall be excluded from gross income until there has been so excluded (under this paragraph and prior income tax laws) an amount equal to the consideration for the contract contributed by the employee. Thereafter all amounts so received under the contract shall be included in gross income.
[2]↩ Includes regular salary deductions, service credit payments and voluntary contributions.
1. SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS. (a) In General. - Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include - * * *
(3) amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer); and SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions. - Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. * * *
(d) Wage Continuation Plans. - Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. * * * (e) Accident and Health Plans. - For purposes of this section and section 104 - (1) amounts received under an accident or health plan for employees, and (2) amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia, shall be treated as amounts received through accident or health insurance.↩
3. Section 1.105-4(a)(3)(i) of the applicable Income Tax Regulations provides as follows: Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension as long as he is disabled, section 105(d) is applicable to any payments which such an employee receives under this plan before he reaches retirement age, but section 105(d) does not apply to the payments which such an employee receives after he reaches retirement age. See § 1.72-15 for additional rules relating to the tax treatment of disability pensions.↩
4. That ruling, as far as is here pertinent, provides as follows: * It is held that, for the purpose of excluding an employee's disability pension from gross income pursuant to section 1.105-4(a)(3)(i) of the Income Tax Regulations, "retirement age" will be deemed to be (1) The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan, i.e., without actuarial or similar reduction because of retirement before some later specified age, provided, however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of all the pertinent facts and circumstances; or (2) in the absence of a written employees' pension annuity plan meeting the requirements of (1) above, the age, if any, at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which the particular employee belongs, provided such age is reasonable in view of all the pertinent facts and circumstances; or (3) if neither (1) nor (2) is applicable, the age 65, the retirement age (as defined in (1) above) generally specified in the old-age and survivors insurance provisions of the Social Security Act and the age at which the retirement income credit provided by section 37 of the Code generally becomes effective. a1 This ruling was modified by Rev. Rul. 61-6, C.B. 1961-1, 15↩ in a manner not pertinent to this case.