**Dorothy KEEFE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 9761.**

United States District Court
N. D. New York.

Nov. 18, 1965.

William S. Andrews, Syracuse, N. Y., for plaintiff.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Marvin Joseph Garbis, Attys., Dept. of Justice, Washington, D. C., for defendant.

PORT, District Judge.

Plaintiff sues for the sum of $1157.85 paid by her as income taxes for the years 1958 through 1962 inclusive, together with interest. It is her contention that the reported income upon which said taxes were paid was erroneously included by her in gross income. She claims that said sums were excludible under Section 105(d) of the Internal Revenue Code of 1954 as, "payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness". 26 U.S.C. § 105(d).

There is no factual dispute. The case was submitted upon a stipulation of facts.

For each of the calendar years 1958 through 1962, the plaintiff included in her tax returns and paid a tax upon the amounts in dispute. Timely claims for refund were filed and rejected by the Internal Revenue Service, after which this suit was timely brought, pursuant to the provisions of Section 1346 of Title 28, U.S.C.

The plaintiff, born May 20, 1901, worked for the New York Telephone Company from March 22, 1922 until February 11, 1955 on which date she suffered an injury, totally disabling her and declared to be permanent by her physician on May 7, 1956. As a result of the permanent total disability, the plaintiff received benefits under the provisions of the "New York Telephone Company's Plan for Employees' Pension, Disability Benefits and Death Benefits" (hereinafter "Plan"), from the time of her injury, throughout the entire period at issue here. The stipulation of facts does not disclose how the benefits from origin of the disability until December 31, 1957 were designated under the Plan. The payments upon which the tax is contested during the years 1958 through 1962 were known under the Plan as a "Service

Pension". Under the Plan, an employee suffering total disability as a result of sickness or injury, with certain exceptions, not pertinent, having fifteen or more years of employment, "shall upon retirement by reason of such disability be granted a pension, which pension is designated a 'disability pension'; provided, that if, at the time of such retirement, the employee is qualified for a service pension * * *, a service pension shall be granted instead of a disability pension. A disability pension shall continue so long as the employee is prevented by such disability from resuming active service with the company." The plaintiff could become qualified for a service pension with the approval of the "Committee"[1] established by the Plan, at any time after fifty years of age (May 20, 1951), and before compulsory retirement at age sixty-five (May 20, 1966); or upon her request at age fifty-five (May 20, 1956) without the approval of the "Committee". (See Appendix).

The Internal Revenue Code of 1954, the regulations and rulings issued under it (See Appendix) set forth the blueprint for the inclusion and exclusion of income derived as a result of health disability. Because the tools used to draw the blueprint are words, some of its lines are more blurred and indistinct than they might be were a more exact tool available.

The pension payments, upon which the tax is disputed, should be included in gross income under Section 61(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 61(a)) unless statutory authority exists for its exclusion. The statute upon which the claimant must rely is Section 105(d) of the Internal Revenue Code of 1954 (26 U.S.C. § 105(d)). Are the amounts received by the plaintiff as pension payments during the years 1958 to 1962 inclusive, "payments in lieu of

---

1. Section 2. Definitions. * * *
   4) The word "Committee" shall mean the persons appointed by the Board to administer the Plan. * * *

wages for a period during which the employee is absent from work on account of personal injuries. or sickness"? The question is further refined by the regulations issued under authority of the Revenue Act. Section 1.105–4(a) (3) (i) provides that the exclusion provided by 26 U.S.C. § 105(d) does not apply to payments received by an employee after reaching retirement age. 26 C.F.R. 1.105–4(a) (3) (i). The validity of the regulation is not questioned. Accordingly, the issue narrows itself down to the single question of whether or not, the plaintiff has established that at the time of the receipt of the pension payments in question, she had not reached retirement age within the meaning of the statute and regulations.

Three cases and two Revenue Rulings[2] are cited by the parties as determinative of this narrow issue, and no others have been found by the court.

The stipulated facts justify finding, in addition to the facts heretofore set forth, that the plaintiff would have continued working until age sixty-five had she not been injured; that the sole reason for the plaintiff's retirement was her permanent and total disability; that the employer permits the employees in actual practice to continue working until age sixty-five barring disability; that approximately fifteen percent of the women employees eligible to retire in the years 1960 and 1962, at age fifty-five, actually retired.

The plaintiff and defendant both rely on Rev.Rul. 57–76, (See Appendix) to determine if the plaintiff had reached "retirement age" within the meaning of Treasury Regulation Section 1.105–4(a) (3) (i). (See Appendix). The Revenue Ruling, as applied to this case, fixes "retirement age" as the lowest age under the Plan at which the employee can retire without the employer's consent, un-

less such early retirement results in benefits reduced on an actuarial basis. Such early retirement does not constitute retirement age under the ruling unless it corresponds with the employer's "actual practice".

The plaintiff could retire at her option without the consent of the employer more than one and one-half years before the period in question. This would require that the pension payments be included in her taxable income, under the Revenue Ruling, unless retirement at that time would result in an actuarial reduction of her pension or, unless retirement at that age did not conform with the "actual practice" of the employer.

The plaintiff contends that retirement at fifty-five would result in benefits actuarily reduced. There is no support in the facts for this conclusion.

Commissioner v. Winter, supra, the plaintiff finds as decisive of her right to exclude the pension payments from income. The plaintiff in that case, as here, received a pension by reason of disability after the age at which he might have retired, but before the age at which he was obliged to retire. The question of an actuarial reduction did not affect Mr. Winter since under the Plan covering him, he like Miss Keefe, because of his early retirement received a smaller pension than he would have received later, but it had not been diminished on an actuarial basis. The evidence in Winter showed that for a period of six years before and three years after the year in question, the percentage of eligible employees who retired at the early optional date, varied from approximately six percent to thirteen percent. On this evidence, the Tax Court and the Court of Appeals found that it was not the practice for employees to retire early. This employee practice "necessarily agreed to

2. Conroy v. Commissioner of Internal Revenue, 341 F.2d 290 (4 Cir., 1965); Commissioner of Internal Revenue v. Winter, 303 F.2d 150 (3 Cir., 1962); Corkum v. United States, 204 F.Supp. 471; Rev.Rul. 57–76, 1957–1 Cum.Bull. 66; Rev.Rul. 58–544, 1958–2 Cum.Bull. 43. The pertinent parts of these Revenue Rulings are set forth in the appendix.

by the company" excluded the pension payment from income since "retirement is postponed" until the compulsory retirement age of sixty-five.

The defendant contends that the holding of Winter is erroneous and should not be followed since, "by a process of judicial alchemy, [it] transformed the practice of *employees* into a practice of the *employer*". Pointing out that the only statistical evidence offered by the plaintiff related to the year 1962, (the last year in suit) and a rough calculation for part of the year 1960, the defendant argues that even under the rationale of Winter it should prevail because the plaintiff's proof is inadequate to bring the plaintiff within the holding of Winter. The government further contends that evidence that a relatively small number of employees retired at age fifty-five would not be controlling. Miss Keefe being fifty-six and one-half years old at the beginning of the first year in controversy, the government contends that she must show that she had not reached retirement age between then and the end of the last year in question. The defendant loses sight of the fact that the statistical evidence is probative on the question of whether or not the early retirement age specified in the Plan is in conformity with the employer's actual practice.

Conroy v. Commissioner of Internal Revenue, supra, and Corkum v. United States, supra, because of dissimilarity of facts, neither approve of Winter nor cast any doubt upon its soundness.

█ The government urges that the holding of Rev.Rul. 58–544, 1958–2 Cum. Bull. 43 which is "on all fours" with the case at bar, be adopted as determinative here. The Revenue Ruling construing a plan identical in all material respects with the Telephone Company Plan holds the normal retirement age for an employee, such as the plaintiff, is reached at the time she attains fifty-five years of age with twenty years of service. Consequently, benefits received from a Disability Pension converted into a Service Pension after age fifty-five is not excludible from income. "[S]uch a ruling does not commit [this court] to any particular interpretation of the law." Miller v. Commissioner of Internal Revenue, 327 F.2d 846, 850 (2 Cir., 1964). However, it is not necessary to argue with the ruling to hold, as I do, in favor of the plaintiff. The ruling was based on the bare language of the Plan. Here the Plan is fleshed out with the facts surrounding the plaintiff's actual retirement, and its actual operation.

Search of counsel and the court has failed to disclose a decision of the Court of Appeals of this circuit on the precise point at issue in this case. Under these circumstances, the holding of Winter is persuasive if not binding.

█ The evidence in this case shows that the plaintiff retired on or before January 1, 1958 as a result of a total and permanent disability caused by an injury suffered on February 11, 1955. Under the Plan she received a "Service Pension" for the years 1958 through 1962, inclusive, by reason of her disability retirement. She was eligible to retire without the consent of her employer upon reaching age fifty-five, having had twenty years of employment.

However, the testimony of Mr. Mallory of the New York Telephone Company shows that retirement at age fifty-five does not correspond with the employer's actual practice. In addition to Mr. Mallory's direct testimony concerning the practice of the employer to continue employees in service, barring disability, until age sixty-five, the practice is corroborated by the statistical evidence in the case. There is no evidence to indicate that 1960 or 1962 were unusual years with respect to early retirement. During those years, approximately only fifteen percent of the female employees who were eligible to retire at fifty-five by reason of age and years of employment, retired. This figure of necessity, must include some employees like Miss Keefe, who were retired because of disability. If, after notice, (See Appendix

Section 4.8 of the Plan) only fifteen percent of the eligible retirees actually retire, although under the Plan early retirement could be compelled "at the discretion of the Committee", it can be inferred that such early retirement is not in conformity with the company's actual practice. The policy of the "Committee" is an indicia of the actual practice of the employer since the members of the "Committee" are appointed, under the Plan, by its board of directors.

Not having reached retirement age within the meaning of the Revenue Act and Regulations and meeting all of the other qualifications for exclusion, the moneys received by the plaintiff under the Plan for the years 1958 to 1962, inclusive, were "payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness;" and as such are excludible from gross income. The plaintiff is entitled to recover the taxes paid upon such sums.

The Clerk is directed to enter judgment in favor of the plaintiff when such judgment is submitted for entry. The judgment, in accordance with the stipulation of the parties is to be prepared by the defendant and submitted to the plaintiff for approval as to amount and form. In accordance with the stipulation, in the event the parties cannot agree upon the judgment to be entered, application may be made to the court upon five (5) days notice for settlement.

So Ordered.

## APPENDIX

### THE PLAN

Section 2. Definitions. * * *

4) The word "Committee" shall mean the persons appointed by the Board to administer the Plan. * * *

Section 4. Pensions.

1) a) All male employees who have reached the age of sixty years and whose term of employment has been twenty or more years and all female employees who have reached the age of fifty-five years and whose term of employment has been twenty or more years shall if they so request, or may at the discretion of the Committee, be retired from active service and, upon such retirement, shall be granted service pensions.

b) Any employee whose term of employment has been thirty years or more, or any male employee who has reached the age of fifty-five and whose term of employment has been twenty-five or more years, or any female employee who has reached the age of fifty years and whose term of employment has been twenty-five or more years may, if the case is approved by the Committee as appropriate for such treatment, be retired from active service and, upon such retirement, shall be granted a service pension.

c) Any employee who has become totally disabled as a result of sickness or of injury, other than by accidental injury arising out of and in the course of employment by the Company, and whose term of employment has been fifteen years or more, shall upon retirement by reason of such disability be granted a pension, which pension is designated a "disability pension"; provided, that if, at the time of such retirement, the employee is qualified for a service pension under subparagraph (a) or (b) above, a service pension shall be granted instead of a disability pension. A disability pension shall continue so long as the employee is prevented by such disability from resuming active service with the Company. If the employee recovers sufficiently to resume active service, the disability pension shall be discontinued and if the employee reenters the service of the Company at that time, the period of absence on disability pension shall be considered as a leave of absence and not as a break in the continuity of the employee's service. * * *

8) The Committee shall notify all employees of their eligibility to retire on service pensions at their own request, as they become eligible.

STATUTES, REGULATIONS AND REVENUE RULINGS

Internal Revenue Code of 1954:

## § 61. GROSS INCOME DEFINED

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, * * * (26 U.S.C. Section 61).

§ 105. Amounts received under accident and health plans.

(a) *Amounts Attributable to Employer Contributions.*—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

\* \* \* \* \* \*

(d) *Wage Continuation Plans.*—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; * * * (26 U.S.C. § 105).

## TREASURY REGULATIONS ON INCOME TAX (1954 Code):

SEC. 1.105–1 *Amounts Attributable to Employer Contributions.*

(a) *In general.* Under section 105 (a), amounts received by an employee through accident or health insurance for personal injuries or sickness must be included in his gross income to the extent that such amounts (1) are attributable to contributions of the employer which are not includible in the gross income of the employee, or (2) are paid by the employer, unless such amounts are excluded therefrom under section 105(b), (c) or (d). * * *

\* \* \* \* \* \*

(26 C.F.R. Sec. 1.105–1.)

SEC. 1.105–4 *Wage Continuation Plans.*

(a) *In general.* (1) Subject to the limitations provided in this section, section 105(d) provides an exclusion from gross income with respect to amounts referred to in section 105(a) which are paid to an employee through a wage continuation plan and which constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness.

\* \* \* \* \* \*

(3) (i) Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension as long as he is disabled, section 105(d) is applicable to any payments which such an employee receives under this plan before he reaches retirement age, but section 105(d) does not apply to the payments which such an employee receives after he reaches retirement age.

\* \* \* \* \* \*

## REVENUE RULINGS

* * * It is held that, for the purpose of excluding an employee's disability pension from gross income pursuant to section 1.105–4(a) (3) (i) of the Income Tax Regulations, "retirement age" will be deemed to be

(1) The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan, i. e., without actuarial or similar reduction because of retirement before some later specified age, provided, however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of

all the pertinent facts and circumstances: * * * (Rev.Rul. 57–76, 1957–1 Cum.Bull. 66).

* * * Section 105(d) of the Code provides that wages or payments in lieu of wages received by an employee pursuant to the provision of a wage continuation plan for a period during which the employee is absent from work on account of personal injuries or sickness are excludable from gross income subject to the limitations stated in that section.

Section 1.105–4(a) of the Income Tax Regulations provides that section 105(d) is applicable only if the wages or payments in lieu of wages are paid pursuant to a wage continuation plan. A wage continuation plan includes plans under which payments are continued as long as the employee is absent from work on account of personal injury or sickness and plans under which benefits are continued until the employee either is able to return to work or reaches retirement age. An employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of personal injury or sickness will receive a disability pension as long as he is disabled, section 105(d) is applicable to any payments which such employee receives under this plan before he reaches retirement age. Section 105(d) does not apply to the payments which such an employee receives after he reaches retirement age.

Revenue Ruling 57–76 C.B. 1957–1, 66, provides that retirement age will be deemed to be the lowest age specified in the appropriate written employee's pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan i. e., without actuarial or similar reduction because of retirement before some later specified age, provided, however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of all the pertinent facts and circumstances.

Under the plan herein described the lowest age at which a male employee can be retired, without consent of the company is age 60 and a female employee is age 55 with 20 years or more of service. Therefore, a * * * female employee will reach normal retirement age when she is 55 years of age and has had 20 years or more of service. (Rev.Rul. 58–544, 1958–2 Cum.Bull. 43).