**Olga A. STEWART, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 67-1355.**

United States District Court, W. D. Pennsylvania.

May 19, 1970.

Joseph A. Steedle, Pittsburgh, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

For the years 1963, 1964 and 1965, plaintiff and her husband (now deceased) filed joint income tax returns showing and paying tax liability of $1,265.97, $1,136.39 and $840.89 for those years. In 1967, plaintiff filed claims for refunds in the amounts of $1,132.28, $1,001.61 and $840.89 respectively for each of those years on the grounds that plaintiff's husband was entitled to, but did not take a weekly sick pay deduction of $100 from income received from his former employer, Eastern Gas and Fuel Associates. The claim being denied, this suit was filed.

The claim is made under Sec. 105(d) of the Internal Revenue Code of 1954, which provides that gross income does not include amounts received by an employee through accident and health insurance if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of sickness. Sec. 105(e) further provides that amounts received under an accident or health plan for employees shall be treated as amounts received through accident and health insurance. A limit of $100 per week is applied to the exclusion.

The sole issue between the parties is whether the payments received by the husband were made pursuant to a "plan" for the continuation of wages during a period of disability, or were merely discretionary payments. Both parties have moved for summary judgment.

1. As of May 31, 1962, Mr. Stewart's employer, Eastern Gas and Fuel Associates had in effect a "Retirement Plan for Salaried Employees." Section IV of that Plan, captioned "Normal Retirement Date" provides for normal retirement at age 65, an option to continue until age 68, and continued employment after age 68 with the approval of the Trustees. Section V of that Plan, captioned "Early Retirement Date and Benefit" provides in sub-sec. (1) that an employee with 20 years service may, with the consent of the employer, retire after age 55; or with 30 years service retire after age 60. Sub-sec. (2) provides that if an employee who has attained age 55 furnishes evidence of disability satisfactory to the retirement committee he shall be entitled to retire and receive a benefit equal to the value of his Early Retirement Benefit.

2. The Section V(2) provision for early retirement on proof of disability was the only published plan of general

application for payment of disability benefits in Eastern.

3. Prior to May 31, 1962, Eastern had a policy of consenting to Early Retirement at age 55 under its Retirement Plan and of adding to the retirement benefit provided by the Plan a supplemental benefit whenever an employee's job was eliminated by internal reorganization.

4. There was no plan or practice in Eastern of eliminating a job position when the incumbent became disabled so that he could qualify for early retirement.

5. On June 1, 1962, Mr. Stewart's job position was eliminated by internal reorganization.

6. As of May 31, 1962, Mr. Stewart had been a salaried executive of Eastern with a continuous employment record of 32 years.

7. Sometime in 1961, Mr. Stewart had suffered a severe paralysis which required hospitalization and subsequent therapy.

8. On April 25, 1962, the general manager of Eastern announced that Mr. Stewart is being given a leave of absence for reasons of health.

9. On May 22, 1962, by an inter-office memo to Mr. Stewart, entitled "Early Retirement—May 1, 1963; Leave of Absence June 1, 1962 to April 30, 1963" notified Mr. Stewart that he was granted a leave of absence from June 1, 1962 to April 30, 1963 and would be placed on retirement beginning May 1, 1963. This notice did not specify the subsection of Sec. V, Early Retirement, under which the benefits would be paid but merely stated that "Your retirement benefits are covered by Eastern's Retirement Plan for Salaried Employees, a copy of which has been furnished to you * * *".

10. The Notice of May 22, 1962, instructed Mr. Stewart that he would be supplied retirement forms to be filled out and returned after the first of the year.

11. The notice of May 22, 1962, stated that during his leave of absence beginning June 1, 1962, Mr. Stewart would be paid 40% of his present salary, or $710.67 per month.

12. The notice of May 22, 1962, stated that beginning May 1, 1963, Mr. Stewart's retirement benefit is estimated to be $197.05 monthly, and that in addition the Board of Trustees will be asked to approve a supplementary allowance of $513.62 per month effective May 1, 1963, subject to approval of the Trustees each year and to be reduced at the time he was eligible for Social Security.

13. The total of the $710.67 in payments as specified in par. 10 above were paid monthly to Mr. Stewart in his lifetime, although somewhat differently apportioned between the two sources.

14. On December 28, 1962, Mr. Stewart filled out a form "Application for Retirement" which contained four spaces for the basis of payment; i. e.; (a) Normal Retirement (b) Early Retirement— Disability (c) Early Retirement—Other, and (d) Optional Retirement. He marked XXX in the space following (c) Early Retirement—Other.

It is the payments received in 1963, 1964 and 1965 from the aforesaid sources to the limit of $100 per week which the plaintiff argues should be excluded. To rebut the government's contention that such payments were not made under an "accident or health plan" for employees, plaintiff contends that the "plan" was that contained in the notice of May 22, 1962 for Mr. Stewart. Plaintiff claims that this is a "plan" for disability benefits because it recognized that Mr. Stewart would no longer be able to work because of illness. A valid "plan" under Sec. 105 may cover a single employee. Kuhn v. United States, 258 F.2d 840 [3d Cir., 1958].

Plaintiff further argues that this is a "plan" because it follows the same company policy as was established for salaried employees no longer able to work because of job elimination through internal reorganization.

The most convincing of plaintiff's arguments is that Eastern did have a

"plan" for sickness or disability under Sec. V(2) of its Retirement Plan. The requirements of V(2) were that:

(1) The employee have reached his 55th birthday;

(2) The employee have completed 20 years of service;

(3) The employee furnish evidence of disability satisfactory to the Retirement Committee.

Mr. Stewart would have satisfied (1) and (2) by May 1, 1963, just as he would have satisfied it for Sec. V(1) benefits. The benefits are the same.

The only distinction between the V(1) Early Retirement and the V(2) Early Retirement is that V(2) requires evidence of disability while V(1) requires the employer's consent. The evidence of disability is clear in the record and was recognized by the employer on April 25, 1962 in granting the leave of absence for reasons of health, and on May 22, 1962 continuing the leave of absence until the date of early retirement eligibility. Plaintiff's sworn answers to interrogatories as to Mr. Stewart's disability are uncontroverted.

The government admits that the employer did have a "plan" for the payment of disablity benefits (Sec. V(2). It contends that Mr. Stewart never qualified for payments under that plan and hence did not receive any payments under it. But Mr. Stewart did qualify by May 1, 1963; he was past his 55th birthday; he had over 20 years service; and the employer recognized his disability in the announcement of April 25, 1962 granting leave of absence and regretting his inability to continue active service with the company.

With the early retirement benefits and the disability benefits being equal, and Mr. Stewart qualifying for the disability benefits, is he to be denied the exclusion of § 105(d) because of the label which it placed upon this? He was entitled to receive $197.05 per month under Sec. V

whether sub. (1) or sub. (2) applied. There is no showing that he would be denied the supplementary benefits if his payments under the Retirement Plan were made under V(2) rather than V(1). The letter of May 22, 1962, made no mention of the subsection of Sec. V that controlled his Early Retirement Benefits.

We find a considerable parallel to the situation in Keeft v. United States, D.C., 247 F.Supp. 589 [1965], where a "disability pension" was provided as well as a "service pension", and further providing that if at the time of retirement under disability the employee is qualified for the "service pension" a service pension shall be granted instead of a disability pension. A person could qualify for a "service pension" at an earlier age than normal retirement age with the consent of the committee at age 50, and by request at age 55.

The Court found in *Keefe* that plaintiff retired as a result of disability, at an earlier age than normal retirement, and that the pension which she received under the "Service Plan" was by reason of her disability retirement.

In C. I. R. v. Winter, 303 F.2d 150 [3rd Cir., 1962] taxpayer became permanently disabled at age 58 and began to receive payments from the employer's pension plan. The Commissioner disallowed the disability exclusion after the employee became 60 because he could have then retired without the consent of the employer under the retirement plan. He was not compelled to retire until age 65. It was not the practice of the great majority of employees to retire before age 65. While the opinion of the Court of Appeals does not reveal the designation of the "plan" under which taxpayer began to receive payments at age 58, the opinion of the Tax Court in 36 T.C. 14 shows that taxpayer did not receive his benefits from the existing health and accident insurance plan, but from the pension plan provision for payment upon permanent disability after 15 years service.

Both the Tax Court and the Court of Appeals relied on Income Tax Regulations 1.105–4(a) (3) (i):

"Section 105(d) applies only . to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of personal injury or sickness, will receive a disability pension as long as he is disabled, section 105(d) is applicable to any payments which such employee receives under this plan before he reaches retirement age, but section 105(d) does not apply to the payments which such employee receives after he reaches retirement age."

Both *Keefe* and *Winter* interpret retirement age as the mandatory retirement age or the usual or normal retirement age policy followed by the employer.

It is clearly established by the evidence in this case that Mr. Stewart could not continue his work because of disability recognized in the announcement of April 25, 1962. It is clearly established that he was eligible for "disability benefits" after May 1, 1963 under the Plan, being over age 55, having more than 20 years service, and his disability being recognized by the employer.

The government's pretrial narrative statement indicates its admission that had it not been for the fact of Mr. Stewart's paralysis he would have been appointed to a new position in the company after his former job was eliminated by internal reorganization.

The liberal interpretation of this statutory exclusion is illustrated by its statutory and legislative history. The present provisions in the 1954 Internal Revenue Code were enlarged to include payments made directly by an employer under an uninsured plan whereas Sec. 22(b) (5) of the 1939 Code covered only health and accident insurance payments. But the formal requirement of an insurance policy was held not necessary in Epmeier v. United States, 199 F.2d 508 [7th Cir., 1952] and this reasoning was followed in Haynes v. United States, 353 U.S. 81, 77 S.Ct. 649, 1 L.Ed.2d 671 [1957] which stated:

"Broadly speaking, health insurance is an undertaking by one person for reasons satisfactory to him to indemnify another for losses caused by illness." (p. 83, 77 S.Ct. p. 650)

This rationale was followed by Kuhn v. United States, cit. supra, in 1958, applying the 1939 Code, with the benefit of the new provisions of the 1954 Code before them.

Also following *Haynes*, the Tax Court in Jackson v. C. I. R., 28 T.C. 36 [1957] held that retirement for disability under a comprehensive employer created plan providing for payment of death benefits, and for retirement for old age and for disability qualified as health insurance under Sec. 22(b) (5) of the 1939 Code. Also in Sibole v. C. I. R., 28 T.C. 40 [1957], the Tax Court held that employees under a state pension plan who were found unqualified for duty by physical examination and who received pensions under a retirement plan covering disability as well as old age retirement were entitled to the exclusion of 22(b) (5) for health insurance.

In Andress v. United States, 198 F. Supp. 371 [N.D.Ohio, 1961], where an employee was guaranteed a life income whether he worked or not, whether sick or well, he was entitled to the $100 weekly exclusion on the sums paid to him during a prolonged period of illness which prevented him from working.

As to the cases relied upon by the government, in Chism's Estate v. C.I.R., 322 F.2d 956 [9th Cir., 1963], the Court of Appeals affirmed as not clearly erroneous the Tax Court's findings that no plan ever existed to cover the continued payments of his salary during disability by a family held corporation to its president.

In O'Neal v. United States, 314 F. Supp. 383 [D.C.S.C.1969], the District Court denied the refund claim of a former F.B.I. agent who retired under the statute providing for early retirement of Federal law enforcement officers, finding that the statute, 5 U.S.C. § 8336(c), was not intended as a disability retirement plan. Taxpayer claimed that his early retirement under this statute was actually caused by disability, but the Court found that factor immaterial, because another provision of the federal employee's retirement law with different provisions covered the field of disability retirement (5 U.S.C. § 8337). The Court also noted that, while irrelevant to the issues of this case, it was highly questionable if taxpayer was eligible for disability retirement.

Most of the government's cases depend on the identification of a "plan" as opposed to a voluntary payment. While the government admits that a plan existed under Sec. V(2) it denies that Mr. Stewart ever qualified for payments under it.

Our resolution of the problem is different. The "plan" exists, it is the "Retirement Plan for Salaried Employees" a broad and comprehensive plan covering Normal Retirement, Optional Retirement, and Early Retirement with company consent or on proof of disability. It covered a variety of situations. It doubly covered Mr. Stewart's situation in 1963 where he was eligible for Early Retirement either under V(1) or V(2) for identical benefits. It made no difference to him under which he was paid and it apparently made no difference to the employer who made no distinction as to the type of Early Retirement benefits in its notice of May 22, 1962. It merely calculated the estimated benefits for Mr. Stewart, and they were the same under V(1) and V(2). The obvious and compelling reason for his terminating work at age 54 was acute physical disability. The company's plan was intended to cover this situation. Thus he was not working due to a disability and the company's comprehensive plan provided an income for this disability.

To the extent that Mr. Stewart received payments under the Retirement Plan in 1963, 1964 and 1965 these are excludable from gross income under Sec. 105(d) and (e).

But we cannot so find with respect to the leave of absence pay received up to April 20, 1963, nor to the Supplemental Allowance payable after May 1, 1963. There is no evidence that these payments were other than discretionary payments. No evidence of a "plan" or practice to cover periods of disability has been shown in connection with these payments.

### ORDER

And now this 19th day of May, 1970, this case having come up on cross-motions of both parties for Summary Judgment, and the Court finding no genuine issue of material fact exists and that judgment should be rendered as a matter of law;

It is ordered that judgment of liability be entered for Plaintiff and against Defendant.

It is further ordered that Plaintiff prepare and submit to Defendant for approval a form of judgment in which the amount of judgment is liquidated in accordance with the foregoing Opinion. In the event the parties cannot agree, application shall be made to the Court for further hearing.