T.C. Memo. 1999-313

UNITED STATES TAX COURT

GREGG CHERNIK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5244-97.                    Filed September 23, 1999.

Gregg Chernik, pro se.

<u>Nancy C. McCurley</u> and <u>Ronald M. Rosen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined a deficiency of
$16,976 in petitioner's 1994 Federal income tax, and an accuracy-
related penalty of $2,753 under section 6662(a)[1].

---

[1]All section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.  Monetary amounts are
rounded to the nearest dollar.

After concessions,[2] the sole issue for decision is whether $6,000 of short-term disability benefits and $10,124 of long-term disability benefits that petitioner received in 1994 pursuant to employer-sponsored disability plans were includable in gross income under section 105(a), or were excludable from gross income under either section 104(a)(3) or section 105(c).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference.

Petitioner resided in San Quentin Prison, Tamal, California, on the date he filed his petition.

From March 18, 1980, to January 21, 1994, petitioner was employed full time by the City of Newport Beach, California (the City), as a member of the City's tree maintenance crew.

---

[2]Petitioner concedes that the following items must be included in his taxable income for 1994: (1) Payments in the amount of $40,635 from the California Public Employees' Retirement System (CALPERS); (2) wage income of $2,738, and (3) vacation pay of $8,845.

Respondent concedes that (1) petitioner is not liable for the 10-percent tax on a premature distribution from a qualified retirement plan under sec. 72(q)(1) with respect to the CALPERS payments to petitioner in 1994; (2) petitioner does not have discharge of indebtedness income in the amount of $5,191 under sec. 61(a)(12); (3) petitioner is not liable for the accuracy-related penalty for substantial understatement of income taxes under sec. 6662(a) and (d).

Sometime prior to 1991, the City established a short-term disability plan and a long-term disability plan (collectively, the disability plans) for certain qualified employees, one of whom was petitioner.[3]  The short-term disability plan benefits were paid directly by the City and were not funded through third-party insurance.  The long-term disability plan benefits were provided through third-party insurance.  During the years 1991 through 1993 and continuing through January 1994 when petitioner became disabled, the City paid all of the premiums with respect to petitioner's long-term disability coverage.

A qualified City employee was entitled to receive benefits under the disability plans after a determination of disability was made and a qualifying claim was filed.  The amount of disability benefits an employee would receive under the disability plans was calculated based on the employee's salary and the number of years of service that the employee had with the City prior to the date of his disability.

From at least January 1991 to the date of petitioner's disability in 1994, petitioner's participation in the long-term disability plan was financed solely through premiums paid by the City; petitioner did not contribute any portion of the premiums.

---

[3]The record is not clear as to whether there were two separate disability plans or simply two types of coverage under one disability plan.  However, for purposes of this opinion, the distinction is not material.

In addition, none of the premiums paid by the City were included in petitioner's gross income.

Sometime prior to January 1994, petitioner began to develop various medical ailments which severely impacted his job performance.  In January 1994, petitioner's employment with the City ended after petitioner was classified as disabled.  At that time, petitioner was suffering from several medical problems including an inability to stay awake and gall bladder problems.

Because of his disability, petitioner qualified for short-term and long-term disability benefits under the disability plans.  During 1994, petitioner was paid, pursuant to the plans, short-term disability benefits of $6,000 and long-term disability benefits of $10,124.  The benefits were calculated based on petitioner's salary and his length of service with the City but not on the type of illness causing petitioner's disability.

For 1994, the City reported the following payments to petitioner:

| | |
|---|---|
| Wages | $2,738 |
| Vacation pay | 8,845 |
| Long-term disability | 10,124 |
| Short-term disability | 6,000 |
| Total | 27,707 |

Federal income taxes of $3,085 were withheld from the above-listed amounts.

During 1994, petitioner also received a distribution of $40,635 from the California Public Employees' Retirement System (CALPERS). This amount consisted of $23,192 in tax-deferred contributions and $17,444 of interest. Federal income taxes of $8,127 were withheld from the distribution.

Sometime prior to August 1995, petitioner was convicted of a crime and incarcerated. While he was in prison, petitioner prepared and filed his 1994 Form 1040A, U.S. Individual Income Tax Return. Because of his incarceration, petitioner was unable to consult his tax records and had to estimate his gross income. On his 1994 return, petitioner reported gross income of $48,280 (wages of $48,000 and interest income of $280). After subtracting the standard deduction and dependency exemptions claimed, petitioner reported taxable income of $37,330.

Petitioner made a mathematical error on the return which subsequently was corrected, decreasing petitioner's taxable income by $2,000 to $35,330.

In his notice of deficiency, respondent listed the income paid to petitioner during 1994 as reported on information returns filed by third-party payors, stated that he could not match income from the information returns to petitioner's 1994 Federal income tax return, and determined that petitioner had failed to report his CALPERS distribution and some cancellation of indebtedness income. Respondent has now conceded that

petitioner's gross income for 1994 includes only the following items:

| | |
|---|---|
| Wages | $2,738 |
| Vacation pay | 8,845 |
| Short-term disability | 6,000 |
| Long-term disability | 10,124 |
| CALPERS | 40,635 |
| Corrected gross income | 68,342 |

OPINION

Whether the disability benefits paid to petitioner in 1994 are subject to Federal income tax as respondent claims or are excludable in whole or in part from petitioner's income as petitioner claims requires an examination of sections 104, 105, and 106.  Respondent contends that the benefits in question are includable in income under section 105(a).  Petitioner argues generally that the benefits are not taxable.  Although petitioner does not cite specific sections to support his position, it is clear on the record before us that, if the benefits are excludable from income, it is only because the requirements of either section 104(a)(3) or section 105(c) are met.

As a general rule, section 104(a)(3)[4] <u>excludes</u> from gross income compensation received through accident or health insurance for personal injuries or sickness. See sec. 104(a)(3); sec. 1.104-1(a), Income Tax Regs. Similar treatment is accorded to amounts received under accident or health plans or from sickness or disability funds. See <u>Trappey v. Commissioner</u>, 34 T.C. 407 (1960)(disability income is received through accident or health insurance for personal injuries or sickness within meaning of sec. 104(a)(3)); sec. 1.104-1(d), Income Tax Regs.; see also sec. 105(e)(1)(for purposes of secs. 104 and 105, amounts received under an accident or health <u>plan</u> for employees are treated as amounts received through accident or health <u>insurance</u>); sec. 1.105-5, Income Tax Regs. However, the parenthetical language of section 104(a)(3) provides an exception for amounts received by an employee to the extent they either are paid directly by the

---

[4]SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.

    (a) In General.-- * * * gross income does not include--

       \*     \*     \*     \*     \*     \*     \*

    (3) amounts received through accident or health insurance * * * for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer);

employer, or are attributable to employer contributions which were not includable in the employee's gross income.  See sec. 104(a)(3); Trappey v. Commissioner, supra; sec. 1.104-1(d), Income Tax Regs.

Sections 105(a) and 104(a)(3) are related in that the two sections "deal with the same subject matter and are in substance but two sides of the same coin."  Winter v. Commissioner, 36 T.C. 14, 18 (1961), affd. 303 F.2d 150 (3d Cir. 1962).  Under section 105(a) amounts received by an employee through accident or health insurance for personal injuries or sickness must be included in gross income to the extent such amounts are attributable to contributions by the employer which were not included in the employee's gross income or are paid by the employer, unless such amounts are excluded under section 105(b) or (c).  See sec. 105; sec. 1.105-1(a), Income Tax Regs.  Only section 105(c) is relevant here.

Section 106 "works in conjunction with section 104(a)(3) and section 105(a)" by excluding from an employee's gross income the cost of employer-provided coverage under an accident or health plan.  Rabideau v. Commissioner, T.C. Memo. 1997-230; see sec. 1.106-1, Income Tax Regs.  If employer contributions are excluded from gross income under section 106, then the benefits attributable to such contributions are governed by section 105(a), rather than by section 104(a)(3).  Petitioner bears the

burden of proof regarding his claim that the disability benefits should be excluded from income. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Petitioner's primary argument is that the disability benefits he received in 1994 are attributable to contributions made by him to the disability plans, and, therefore, are excluded from his gross income under section 104(a)(3). Specifically, petitioner alleges that he contributed to the disability plans by paying premiums for disability coverage during the 1980's under a prior disability plan that the City maintained (the prior plan). Petitioner argues, in effect, that his investment in coverage under the prior plan qualifies, in effect, as his contribution to the successor plans (which provided his disability benefits in 1994) when he agreed to convert to the successor plans and give up his coverage under the prior plan.[5] Based on this theory, petitioner concludes that the disability benefits paid to him in 1994 are attributable to contributions by him, and, therefore, must be excluded from his gross income.

---

[5]Petitioner also argues that the City did not pay the premiums for about 6 weeks in early 1991, but he failed to prove that this was so. Even if petitioner had proved that the City failed to pay certain premiums for a short time in 1991, the critical fact is that the only disability plan premiums paid from 1991 to the date of petitioner's disability were paid by the City.

Petitioner has failed to prove that the short-term disability benefits paid to him in 1994 were attributable, in whole or in part, to any contributions he made under the City's short-term disability plan.  All of the short-term disability benefits petitioner received were paid directly by the City. Under section 105(a), benefits paid by the employer must be included in the employee's income.  See also sec. 104(a)(3); sec. 1.105-1(a) and (b), Income Tax Regs.

Similarly, petitioner has failed to prove that the long-term disability benefits paid to him in 1994 were attributable, in whole or in part, to any contributions he made under the City's long-term disability plan.  Indeed, the record reflects that all of the premiums with respect to the plan from at least January 1991 through the date when petitioner separated from service due to disability were made by the City.  Daniel Matusiewicz, the acting deputy director of administrative services for the City, testified at trial regarding the City's method of accounting for its premium contributions to the long-term disability plan and referred to payroll records which were admitted into evidence without objection.  The payroll records show that, for each pay period ending in January 1991 through the date of petitioner's disability in January 1994, the City made all premium payments to the third-party insurer providing the long-term disability coverage for petitioner, and that no portion of those premiums

was deducted from petitioner's wages or included in his gross income during that period.

Whether the long-term disability benefits are "attributable to contributions by the employer" within the meaning of both sections 104(a)(3) and 105(a) depends upon the type of plan involved and the source of contributions made to the plan. See secs. 1.104-1(d), 1.105-1, Income Tax Regs. Regardless of the type of plan involved, however, contributions made to a prior disability plan outside the relevant look-back period[6] are not taken into account in making the required analysis. See id.

In this case, petitioner made no contributions to his long-term disability coverage for any period from at least January 1991 through the date of his disability. Although the record is far from clear regarding the type of long-term disability plan implemented by the City, the record is clear that petitioner did not contribute to his long-term disability coverage as required by section 104(a)(3) and 105(a). See also sec. 1.105-1, Income Tax Regs.

---

[6]Sec. 1.105-1(d) Income Tax Regs., uses different tests to determine whether, and to what extent, benefit payments are "attributable to the employer's contributions" for insured plans using individual policies and group policies. For each plan, premium payments over a fixed period of time (the look-back period) are examined, but the look-back period differs depending on the type of plan involved. In the case of the City's long-term disability plan, which is a group plan, the look-back period is limited to 3 years.

Since the City's contributions for petitioner's long-term disability coverage were not includable in petitioner's income, see sec. 106, and since the City made all of the contributions toward petitioner's long-term disability coverage from at least January 1991 to the date of petitioner's disability, it follows that the long-term disability benefits received by petitioner from the plan are not excluded from his gross income under section 104(a)(3). Rather, the benefits must be included in petitioner's gross income under section 105(a) unless the requirements of section 105(c) are satisfied.

Petitioner argues, in essence, that both his short-term and long-term disability benefits are excludable from his gross income under section 105(c). Respondent contends that section 105(c) does not apply. We agree with respondent.

Section 105(c) sets forth an exception to the general inclusionary rule of section 105(a). It provides that gross income does not include amounts received through accident or health insurance for personal injuries or sickness to the extent the amounts (1) constitute payment for the permanent loss or loss of use of a member or function of the body of the employee, and (2) are computed with reference to the nature of the injury without regard to the period of time the employee is absent from work. See also sec. 1.105-3, Income Tax Regs.

For disability benefits to qualify for exclusion under section 105(c), three requirements must be met. See Beisler v. Commissioner, 814 F.2d 1304, 1306-1308 (9th Cir. 1987), affg. en banc T.C. Memo. 1985-25. We address only one--whether the payments are computed with reference to the nature of the injury. See sec. 105(c). This requirement is satisfied only if benefits under the plan vary according to the type and severity of the injury. See Beisler v. Commissioner, supra; Rosen v. Commissioner, 829 F.2d 506, 510 (4th Cir. 1987); Hines v. Commissioner, 72 T.C. 715, 720 (1979).

Although petitioner unquestionably suffered from serious medical ailments in 1994 and thereafter, the record does not support a finding that the disability benefits received by petitioner were calculated with reference to the type and severity of the injury suffered. Rather, the evidence is clear that the disability benefits were calculated with reference to the petitioner's salary and his years of service with the City and did not vary depending on the injury or illness suffered.

Because petitioner's disability benefits were not calculated with reference to the nature of petitioner's injury as required by section 105(c)(2), petitioner's disability benefits do not fall within the section 105(c) exception. Accordingly, we conclude that the short-term and long-term disability benefits

received by petitioner from the City are includable in petitioner's gross income for 1994 under section 105(a).

We have carefully considered all remaining arguments made by the parties for a result contrary to that expressed herein, and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing and the concessions of both parties,

<u>Decision will be entered</u>

<u>under Rule 155.</u>